### JACOB LONGFELLOW *versus* LUTHER QUIMBY & *al.*

The power, which the county commissioners exercise over roads, under the statute, is a judicial power, and the records of their proceedings and judgments, so long as they act within the sphere of their duty, cannot be incidentally impeached.

Hence, if there are important irregularities in the location of a road, or in the assessment of taxes to build it, they can be taken advantage of only by *certiorari.*

In a sale of lands by a county treasurer for unpaid taxes, where there is no stipulation before the sale, that a credit is to be given, and after the sale the treasurer receives a note for part of the purchase money, this does not invalidate the sale.

Where a trespass has been committed upon the land, of which the plaintiff is part owner, his right of action cannot be defeated by a subsequent payment to his co-tenants.

In an action of *trespass quare clausum,* evidence is not admissible of acts of trespass upon other lands of plaintiff, than those described in his writ.

Nor is the trespass, as matter of law, a wanton one, though committed without license from any owner of the land.

" The trouble of looking after trespassers," is not to be taken into consideration by the jury in making up the damages in such an action.

The law does not recognize interest as the exact measure of damages for the detention of property taken in trespass, in addition to its value.

THIS was an action for *trespass* upon certain lots in townships numbered six and seven in the county of Washington. The writ was dated in April, 1845.

The cause came on for trial at the last term of this Court, before WHITMAN, C. J.

The plaintiff read a deed from George S. Smith, county treasurer, to him of 10,674 acres of land in east half of town-

ship numbered six, dated Oct. 22, 1840, and another deed of the same date, from said Smith as county treasurer, to the plaintiff of 29,000 acres in township numbered seven.

It was admitted, that said townships were lotted prior to the assessment of the taxes referred to in the deed of said Smith.

It appeared in evidence, that defendants in the winter of 1844 and 1845, cut and hauled a large amount of timber from some portions of the land described in plaintiff's writ.

The defendants proved by George S. Smith, that the sale of said townships by him on the 9th Oct. 1840, were on the usual terms for cash, that plaintiff paid him $1,000 down, and gave his note for the balance of about $2,000. This was done, as he did not have occasion to use the money, and considered the note as good as bank bills.

The defendants also introduced office copies of deeds, executed in 1836, from W. T. Pierce and H. Pierce, to J. B. Hutchinson, M. Talcot and A. Sweetland of an undivided half of all the lots in No. 7, mentioned in plaintiff's writ. Also a deed from plaintiff to J. B. Hutchinson and others in 1843, of an undivided half of the lots named in the plaintiff's deed. Also a deed from Fuller & Warren to W. T. & H. Pierce in 1835, of three-fourths of the lots named in the writ. Also a deed from the State of Maine to Wm. A. Blake in 1835, of township No. 6, and from Blake by his grantees in 1843, to one of the defendants.

It also appeared from the testimony of *Waldo T. Pierce*, that since the year 1835, he had acted as agent for J. B. Hutchinson, Talcot and Sweetland, of the State of Connecticut, in the management and oversight of their interests in township numbered seven, and in two lots in number six; that some years he had given permits, and thought he had given one, to one of defendants in 1842 or 1843; that this permit was for one team; that since that time, defendant had cut a small quantity almost every year on some of the lots; that he had two persons to examine those lots, and ascertain the quantity cut, and he had settled with defendants for all that had been cut, or reported by scalers as cut on said land by defendants. That a few weeks

since he had settled with said Hutchinson and others, who were all present with the defendants at Bangor, for all the timber that had been cut on these several lots.

The plaintiff also put in an abstract of the record of the county commissioners, under which said county treasurer sold said townships to the plaintiff, and a copy of their records relating to the opening of the road through the same. It appeared that public notice was duly given in the papers, of the proposed sale.

With a view to settle the question of damages the Judge ruled that the action was sustained, and instructed the jury, that as to township No. 7, the defendants, having failed to prove a license from any owner of said lots therein, were to be deemed wanton trespassers, and that plaintiff was entitled to recover the full value of the timber taken off, and such further compensation as he ought, in the opinion of the jury, to have for looking after the trespassers, and in addition to the damages occasioned by being deprived of the value of the timber, since it was taken off, that it was not unusual to consider the interest of the value, as such compensation. That as to lots in No. 6, the defendants had made a show of title ; and that if they acted in good faith, supposing they had good title to the land, at the time when the acts complained of were done, the measure of the damages under the count for *trespass de bonis asportatis*, would be the value of the trees when severed from the freehold, and compensation for his trouble and damages for detention of the value as in Township No. 7. The jury returned a verdict for the plaintiff.

If in the opinion of the whole Court, the action was not maintainable, the verdict was to be set aside and the plaintiff to become nonsuit ; but if, in their opinion, the action is maintainable, and the rulings of the presiding Judge were correct, judgment was to be entered on the verdict ; but if said rulings were not correct, the verdict was to be set aside and a new trial granted.

*Hobbs,* for defendants, argued 1st, that as to the acts on township No. 7, the defendant had a license or its equivalent

from the tenants in common, or some of them, as was shown by the testimony of Peirce, and that a settlement of a trespass by one tenant in common bars the action of the plaintiff, he being co-tenant. 1 Saund. 103, 106 ; Com. Dig. pl. 3, 35:

2. The assessment of the tax by commissioners was illegal, and therefore void. The townships were lotted before the assessment, and the taxes should have been assessed upon the several lots in the same way that town taxes must be. *Shimmin* v. *Inman*, 26 Maine, 228.

3. That the testimony as to trespasses on lots 79 and 80, not being described in the writ, was wrongfully admitted.

4. That the sale by the county treasurer, was in effect on credit, and therefore plaintiff's title failed. *Cushing* v. *Longfellow*, 26 Maine, 306.

5. That the record of the commissioners, being in the case, the Court will look into it, without a formal *certiorari*, and give only proper effect to their unlawful proceedings.

6. The location of the road through No. 6 and 7, was illegal. It does not appear that the commissioners met at the time and place appointed. The adjudication was illegal for there was no quorum present. Act of 1832, c. 54, § 2. It does not appear that all or a major part met. Three years were not allowed to open the road, but only eighteen months. Act of 1835, c. 90, § 1. Nor did they decide whether the land was enhanced in value. Act of 1833, c. 101, § 1.

7. The damages were erroneously assessed under erroneous instructions. The question whether the defendants were wanton trespassers or not, was for the jury to settle, not the Court. Nor was the instruction correct as to the measure of damages. "Compensation for trouble in looking up trespassers," is too remote to be allowed to enter into the computation by the jury. And the instruction as to interest is not sustained by law. *Cushing* v. *Longfellow*, 26 Maine, 306.

*J. Granger*, for plaintiff. As to the alleged illegality of the assessments, if that matter can be inquired into in this way, there was no validity in the objection. Different owners may have separate assessments, when they furnish evidence of the

title at the proper time. The advertisements here were in general terms, not stating the lots, and rightfully so, as has been already decided.

In regard to the cutting on No. 7, under an alleged license from Peirce, it turns out from an examination of the testimony, that there was no license, but merely that Peirce has settled with defendants since the commencement of this action. That can have no influence, for he had no authority to interfere in this suit. One tenant in common has no right to grant a license to cut timber on the common land. R. S. c. 129, § 7. The defendant has failed to show any right to go on to this township.

Lots 79 and 80, are not embraced in the description in the writ, and if plaintiff is not entitled to recover for what was proved to have been cut on these, he will remit enough of the verdict to cover that amount. The evidence was explicit as to the quantity.

The sale by the county treasurer was not one on time, according to his own testimony, and if he took a note for a part of the purchase, instead of cash, the defendants have no concern with it. The treasurer could settle for a cash sale as he pleased.

The objections to the location of the road cannot be valid. The record of the commissioners is sufficient until it is vacated, and it cannot be impeached in this method.

As to the instruction in regard to the damages, the verdict ought not to be disturbed, when the Court can see that no injustice has been done. The verdict is actually less than the value of the timber cut, as stated by the only witness who testified respecting it.

TENNEY, J. — The plaintiff claims title to the land, on which he alleges that the trespass has been committed by the defendants, under a sale made by the treasurer of the county of Washington, to him on October 9th, 1840. This sale was for the purpose of obtaining the tax, which had been assessed upon the land by the county commissioners of that county, to make

the road laid by them through the townships, in which the land was situated.

The defendants deny the title claimed by the plaintiff, and therefore his right to maintain this action, upon the ground, that the records of the county commissioners, introduced, show, as it is contended, that they did not follow the steps pointed out by the statute, in their attempt to establish the road; and several defects in their proceedings are pointed out and relied upon. In adjudicating upon the necessity of the road and in their subsequent acts in its location, the commissioners had jurisdiction of the subject matter. It appears that they gave notice to all interested, in a manner contemplated by the statute; and therefore the defendants became so far party to the proceedings, that they are precluded from denying the jurisdiction of the Court. The power, which the commissioners exercised in reference to the road, under the statute, was a judicial power. The records of their proceedings and judgments are, therefore, entitled to the same respect as the records and judgments of other tribunals, so long as they act within the legal sphere of their duty; they have the character of judgments, until impeached in some proper mode.

The road, which the commissioners laid out, was such *de facto*, and the failure of the plaintiff to recover upon this ground, would have no effect to make it otherwise. It cannot be declared a nullity, until the proceedings are quashed on *certiorari*; and this can be done, only in the exercise of a sound discretion of this Court, where the subject is legally before it, notwithstanding it may be seen by the record now in this case, that there were important omissions and irregularities. To allow these omissions and irregularities to have the effect contended for, as matter of right and law, would be giving to them a consequence, when incidentally presented, which they might not have if they were directly brought to its consideration on a petition for *certiorari*. And the road might continue to exist as a legal highway, while the power, which the statute requires should be exerted for its construction and repair, might be practi-

cally denied. Principles which tend to such results cannot be admitted.

The authority of county commissioners, on the subject of highways, has been regarded in this State as differing materially from the powers vested in towns and their officers over town and private ways. It has been held by this Court, that a writ of *certiorari* does not lie to quash the proceedings of selectmen, and the town where they have attempted to lay out and establish ways, which they are authorized to do, and failed to comply with all the legal requirements, as it does where highways have been located by the court of sessions or county commissioners; and hence the proceedings of towns in this matter, have been allowed to be examined and controverted in actions of trespass *quare clausum fregit.* *Harlow* v. *Pike,* 3 Greenl. 438. The Court say, in the case of *Parks* v. *the City of Boston,* 8 Pick. 218, " The uniform distinction is between judicial and ministerial acts; the former being only voidable for error, and the latter being merely void, if not done in pursuance of lawful authority. And as judicial acts are valid, until reversed for error, a writ of error or *certiorari* will lie in such cases. If the proceedings are in a Court of record, according to the course of the common law, a writ of error is the proper remedy, to reverse and vacate an erroneous judgment; otherwise, the remedy is by *certiorari.* *Wales* v. *Willard,* 2 Mass. 120; *Sumner* v. *Parker,* 7 ibid. 79; *Cushing* v. *Longfellow,* 26 Maine, 306.

Another objection relied upon by the defendants is, that the county commissioners erred in the manner in which they made the assessments upon the land of the township, for the purpose of making the road; that instead of assessing the land in gross, they were required to impose the tax upon the several lots, into which the town had been divided. And the case of *Shimmin* v. *Inman,* 26 Maine, 228, is adduced as authority in support of the proposition contended for. The same provision of the statute, which authorized the commissioners to establish the road, empowered them to raise a tax with which to support it.

Their power is judicial in one case as in the other, and the

judgment which is the result of their deliberations and acts, as disclosed by their records, must be annulled in another process, before the assessment can be pronounced void. But it may not be improper to remark, that the statutes regulating the assessments of unimproved lands of non-resident proprietors in incorporated towns, and that for the direction of county commissioners in the performance of their duties which we are now considering, are unlike. In the latter, it is provided, that the assessments shall be made on such tracts of land, township or plantation at so much per acre, as the commissioners shall adjudge necessary for making or mending such highway, and defraying the necessary expenses attending the same; if the lands are held in severalty, the proprietors shall be taxed in severalty, provided such proprietors shall previously furnish the Court with proper documents for that purpose. Stat. 1821, chap. 118, sect. 24. The case does not show that such documents were furnished, and it is not perceived that there was any error on this account in the assessment.

The objection to the validity of the sale of the land, by the county treasurer, has no foundation in fact. The sale was on the usual terms for cash, and there was no understanding, that the treasurer should not call on the purchaser for the money till it was wanted. After the sale, the plaintiff paid a part of the consideration and gave his note for the balance, the treasurer having no occasion for the money, and considering the note as good as the common currency of the country. This is unlike a case, where a stipulation is made before the sale, that a credit is to be given to the purchaser. Here the treasurer, as such, was accountable for the whole sum for which the land was sold, and the taking of the note for a portion of the purchase money was a matter between the plaintiff and himself, in his private character.

No evidence was adduced tending to prove that the defendants, or either of them, entered upon the land described in the plaintiff's writ, and cut the timber thereon under a license from any one; and their acts at the time they were committed, were a trespass upon the rightful owner. For this trespass, this ac-

tion was properly brought by the plaintiff. The subsequent payment to the other tenants in common with the plaintiff cannot defeat the action. The injury complained of, was the breaking and entering the plaintiff's close, aggravated by cutting and carrying away the trees thereon standing. The damage sought to be obtained was to the plaintiff alone, and to recover this, he is entitled to his several action. R. S. chap. 129, sect. 17. If the co-tenants had themselves cut and carried away the timber in the same manner, that the defendants are charged with doing it, the cutting and carrying away would have been unlawful, and they would have been liable in an action, for three times the value thereof, to the plaintiff. R. S. chap. 129, sect. 7. Their receipt of the value of the timber belonging to the plaintiff, given to the defendants, cannot take away his right to maintain the action, previously commenced, for the loss which he has suffered by their unauthorized acts.

The plaintiff was allowed to introduce evidence against the objection of the defendants, to show that a quantity of timber was cut by them on parts of township No. 7, which parts were not described in his writ as land on which a trespass was alleged to have been committed. This was incorrect. A reduction of the damages found by the jury, which is offered by the plaintiff, cannot be made with certainty. The quantity and the value of the timber cut upon this portion of the township is shown, and no contradictory proof appears to have been adduced; but no evidence is reported of the whole quantity taken from this township, and nothing exhibiting the sum allowed by the jury in addition to the value of the timber.

The jury were instructed, that the defendants, having failed to prove a license from any owner of township No. 7, were to be deemed wanton trespassers and the plaintiff was entitled to recover the full value of the timber taken off, and such further sum as he ought, in the opinion of the jury to have, for looking after the trespassers; and in ascertaining the damages for trespass upon township No. 6, the jury were allowed to add to the value of the trees, compensation for the trouble of the plaintiff. These instructions were erroneous. The mo-

Longfellow *v.* Quimby.

tive of the defendants, if material, was a fact to be found by the jury. The Court could not make the legal conclusion that the acts were a wanton trespass, from the fact that the defendants had no license from the real owners. One may enter upon the land of another by virtue of an authority, which he believes to be fully sufficient; if it proves otherwise, his acts cannot be termed wanton, so long as they were prompted by honest intentions.

The case discloses no attempt to prove any trouble on the part of the plaintiff in looking after the trespassers; and damages would not be increased by reason of what did not exist. The jury might well have understood, that they were permitted to presume that the plaintiff had been put to trouble in seeking indemnity for his losses, by exertions to ascertain who invaded his rights, and to bring them to justice, and that damages should be allowed therefor; and it may have been done accordingly.

If evidence upon this point had been introduced, it was not competent for the jury to have increased the amount of their verdict on that account. Damages are given as compensation, recompense or satisfaction to the plaintiff for the injury actually received by him from the defendants, and they must be the natural and proximate consequence of the act complained of. 2 Greenleaf's Evidence, sect. 253 and note, 2nd ed.; *ibid.* 255. The trouble of looking after the trespassers is not of this character, and cannot be considered by the jury in the estimation of damages.

The law does not recognize interest as the exact measure of damages for the detention of property taken in trespass in addition to its value. The jury could not have so understood the Judge in his instructions. He laid down no rule of law, which required them to make that addition or to restrict them thereto. *Verdict set aside, and new trial granted.*