## DONNEL *v.* BELLAS.(*a*)

A sale of unseated lands was made for taxes, and a deed acknowledged but not delivered. The purchaser gave his note to the treasurer, who did not account to the county for the price bid. Within five years from the sale, the representatives of the owner of the tract paid the taxes in arrear, and costs, and received the deed which had been intended for the purchaser. The purchaser at the tax-sale then paid the note given to the treasurer, having notice of the previous payment of the taxes by the representatives of the owner of the tract. *Held*, that the title of the owner was not divested.

In such case the statute of limitations of 1804 does not bar an action brought more than five years after such sale, by a purchaser from the former owner.

The fact that money was received by the treasurer in redemption of certain of the tracts sold at the same time, to the same purchaser, is not equivalent to payment by him of the amount of his bid for another tract : Per BURNSIDE, J.

IN error from the Common Pleas of Northumberland.

Ejectment. The title of the plaintiff below, defendant in error, was a warrant for the tract in question, in the name of William Green, which was assigned to William Witman. Witman's estate was sold to the plaintiff below under proceedings in the Orphans' Court, commencing August 26, 1828, the deed having been made September, 1829.

The defendants claimed under a sale for taxes. They showed that, in 1824, this tract, with several others, had been sold to one Staples, for taxes then due. A deed for this tract had been acknowledged by the treasurer; but, as will be seen, it was never delivered to the purchaser. The defendants traced their title from Staples, by his deed to G. Donnel, in October, 1829, and other subsequent conveyances. It was in evidence, that the total amount of the bids made by Staples at the sale was $129.60. The amount due for taxes on the tracts sold was $87.68. Staples paid in cash, at the time of the sale, $34.36. This amount was the purchase-money of certain of the tracts so sold, other than the one in question, and it was so appropriated and entered on the books. Staples gave his note to the treasurer for $59.57, as the balance of the purchase-money. But he never executed the bonds for the surplus which would remain after payment of the taxes. In June, 1825, the treasurer settled with the county ; and there was contradictory evidence, whether he was charged with this note, or the balance of the purchase-money. The verdict found that he was not.

It was also proved, that, in 1824, Staples had entered into an

---

agreement under seal, by which Henry Donnel was to become the owner of one-half of the tracts purchased at the treasurer's sale, which should not be redeemed. Henry Donnel died in 1826. In June, 1829, Geo. Donnel, his son, and the father of some of the defendants, procured a power of attorney from Staples to receive the treasurer's deed, and act in the matter. In August, 1829, he paid to the late treasurer $76, and took up Staples' note. In October, 1829, a deed for the land was executed to him by Staples.

The plaintiff proved that, in January, 1829, C. Witman, the son and administrator of William Witman, the former owner of the land, paid to the late treasurer the amount of taxes and costs due on the tract in question, and then obtained from him the deed which had been executed for Staples. Staples resided in Philadelphia, and from him Donnel had obtained the deed and the power of attorney. But it was shown, that before this he had notice of the delivery of the deed to C. Witman, and of the payment of the taxes and costs by him. There was also evidence that certain of the tracts sold to Staples had been redeemed by the purchasers; and it was contended that this fund was to be applied in payment of the balance of the purchase-money; but the verdict found that the late treasurer, who received this fund, had not accounted for it to the county.

His honour (ANTHONY, P. J.) instructed the jury, that if the treasurer, who received the note from Staples, had not accounted for it to the county as cash, until after the payment by C. Witman, the title was not divested by the sale, and that the plaintiff's claim was not barred by the statute. (The suit was not brought within five years from the date of the sale.)

These points in the charge were assigned for error.

The case was argued at the last term by *E. Greenough*, and now by *Canby* and *Higins*, for plaintiffs in error.—They referred to 2 Penna. 223; 21 Wend. 178; 4 W. 59; 3 W. & S. 529; 19 John. 345; Phil. Ev. 151; 3 East, 192; 5 S. & R. 267; 1 W. & S. 175; 6 W. & S. 511.

*J. Pleasants* and *H. Bellas*, contrà—Contended that, without a delivery of the deed, the plaintiffs had no legal title. That they had not an equitable title, because of the non-payment of the purchase-money, pursuant to the express directions of the statute; nor was there any payment, or compliance with the contract, until after the redemption by the heir of the former owner. Nothing but

actual payment will save the owner: 13 S. & R. 374; and this rule should be applied to the purchaser. The object being the collection of the public dues, the allowing a credit to the purchaser is contrary to policy. Private transactions between the public officer and the purchaser cannot be received as such payment, as has been ruled in similar cases: 2 R. 199; 1 W. & S. 428; 9 John. 263; 1 Cow. 46; 9 W. 280; 15 S. & R. 162; 2 W. C. C. 192; 3 W. & S. 276. The fact that the treasurer held redemption-money paid on other tracts, cannot avail. For this was a debt due by him to Staples, and, without more, could never extinguish the debt due by Staples to him: 8 W. 39, 410. Besides, this would not enure to the benefit of Staples: 4 W. & S. 294. His laches alone would discharge a private vendor, much more a bargain of this kind, which is wholly unauthorized, if not forbidden by the statute: 1 J. C. R. 370; 4 Ib. 559; 13 Ves. 244; Sug. Vend. 277, 281. The charge was erroneous only in favour of the defendants. We contend that the treasurer could not give time to the purchaser, and substitute himself as the debtor of the county. But, be this as it may, as he never paid the debt, the right of the purchaser was never perfected.

*Aug. 5.* BURNSIDE, J.—This was an amicable action of ejectment. Bellas, the plaintiff below, claims the land in question, under a warrant of the 6th of December, 1784, to William Green; surveyed the 22d of September, 1789, 306½ acres, and patented to William Green, 23d of February, 1790, who, by deed of assignment, on the 15th of June, 1808, conveyed to William Witman. Judge Witman paid the taxes up to 1815.

The defendant below claims under a tax-sale. They gave in evidence, that the William Green tract was taxed from 1815 to 1824 inclusive, and that on the 16th of June, of the latter year, it was struck off to one Edward Staples, under whom the defendants claimed. It was in evidence, that Staples' first, and indeed only appearance in Northumberland county, was at the sales in June, 1824, when he bid off this tract and some fourteen others. He paid some money, part of which would seem to have been applied on the books of the treasurer, and gave a written memorandum to the treasurer Weiser, to pay on the acknowledgment of the deeds, at the next August court, the balance of $59.87. There was no money marked on the treasurer's books paid on the William Green tract. It was struck off at $9.51. The taxes and costs amounted to $9.20½. At the August court, Weiser, the treasurer, acknow-

ledged the deed, and in the course of the ensuing winter he sent that deed, with others, to the city of Philadelphia, with the written evidence of the balance due; but, after diligent search, Staples could not be found. The papers were returned to Weiser, who went out of office. When Judge Witman died did not appear, but his son and administrator came to Sunbury in the latter part of 1828, or the beginning of 1829, when he called on Weiser and paid him $13.28½, the amount of taxes and costs due from 1815, and lifted the treasurer's deed, that had been made out, but not receipted on, for Staples; after this he applied to the Orphans' Court of Northumberland county for an order of sale, to pay the debts of his father, when the William Green tract was duly advertised, and sold as the property of William Witman, and the sale confirmed by the Orphans' Court, to Hugh Bellas, for $300. Was the title of Witman divested by the treasurer's sale, and was that title vested in Staples? The spirit and object of the several acts of the legislature which authorize the sale of unseated lands for the payment of taxes, are to compel and enforce the prompt payment of the annual assessments. Of the acts now in force on this subject, the first is the act of the 3d of April, 1804 (Purd. 1135, 4 Sm. L. 201), which directs the sheriff or coroner of the proper county, to give notice and advertise in the manner prescribed in the act, and to make sale of the whole or any part of such tract of unseated land as he may find necessary for the payment of the taxes due thereon, and of all costs necessarily accrued by reason of such delinquency, *and to make and execute a deed or deeds in fee-simple to the purchaser or purchasers.*

Then came the act of the 4th of April, 1809 (Purd. 1137, 5 Sm. L. 73), which transferred the power vested in the sheriff, to the treasurer of the respective counties.

Next followed the act of the 13th of March, 1815 (Purd. 1138, and 6 Sm. L. 299); which, in the 1st section, fixes the sales by the treasurer, to commence on the second Monday in June, in the year 1816, and at the expiration of every two years thereafter, to make and execute deeds to the purchasers, in the manner directed by the sheriffs in the act of 1804.

The 2d section provides for the case of the treasurer's death after the sale, and before the deed is made. The succeeding treasurer is to execute a deed or deeds, on payment of the purchase-money: Purd. 1139.

The 3d section directs the purchaser to make payment as soon as the deeds are tendered; and, if not paid, to bring actions; and when judgment is obtained, there shall be no stay of execution. It

was soon demonstrated that there were still difficulties in obtaining prompt payment of the taxes and costs. Insolvent purchasers were common—difficulties arose in finding the bidders, to whom the deeds could be tendered. To remedy these evils, and insure prompt payment at treasurer's sale, the legislature, on the 13th March, 1817 (Purd. 1141; 6 Sm. 426), enacted, that it should be the duty of the purchaser or purchasers, at treasurer's sale, *as soon as the property is struck down, to pay the amount of the purchase-money, or such part thereof as shall be necessary to pay off the taxes and costs; also one dollar for the use of the prothonotary, for entering the acknowledgment of the deed; and in case the amount is not forthwith paid after the property is struck down, the sale .may be avoided, and the property again set up by the treasurer.*

This act gives the treasurer the discretion, if the money is not forthwith paid when the tract is struck down, either to set up and sell again, or bring his action before he acknowledges his deed. Here the treasurer did not adhere to the act of Assembly; he trusted Staples, and took his written memorandum to pay when the deed was acknowledged. He never paid, and never received the deed. The trusting him by the treasurer, for a short time, when he absconded and never fulfilled the trust reposed in him by the treasurer, surely gave him no title, nor did it divest the title of Judge Witman, the original owner. It is contended, that as some of the tracts bid off by Staples were redeemed, that it was money in the hands of Weiser, that might have been applied to the payment of the taxes and costs on this tract. On this branch of the case, there was much evidence on both sides, and some that was contradictory. The court left it to the jury to determine whether Weiser, the treasurer, paid or settled with the county auditors for the amount of the taxes due on the William Green tract, which Staples had become liable to pay by his bid. The jury, by their verdict, negatived the fact relied on by the defendants; and this, in my judgment, was leaving the case more favourable for Staples than the law would authorize. When Staples made the bid, he became liable, by the act of 1817, to pay the taxes and costs, or to be sued by the treasurer, in the name of the county, for the same. His title was not vested until he paid the taxes and costs, and gave his bond for the surplus. This he neglected for upwards of five years (nor did he ever attempt to perfect his title), when the representative of the original owner appeared, paid the

taxes and costs, and lifted the deed, that had never been delivered to Staples, and which he had never entitled himself to receive.

I am aware that there is much management and fraudulent perversion of the law about purchasing at treasurers' sales. It is our duty to discountenance it. The intention of the legislature is plainly and clearly expressed, that, as soon as the bid is made and the hammer falls, it is the duty of the purchaser to pay the taxes and costs. If not, for the treasurer to compel the payment before the deed is acknowledged. Staples never had his title perfected as the legislature have required; he never received the treasurer's deed, nor entitled himself to receive it, by the payment of the taxes and costs, and giving his bond for the surplus; although the deed was acknowledged, it never was delivered. All deeds take effect from delivery.

Delivery of the deed is necessary and essential to its creation as a conveyance—delivery of the instrument is necessary to constitute it a deed: McKinney v. Rhoads, 5 W. 343; without delivery it is no deed: 1 Inst. 35; see 2 Rep. 5; 5 W. 343. Placing the deed on record has been held not to be a delivery : Chess v. Chess, 1 Pa. 32.

As to the title of the defendants : they gave evidence of an agreement about the time of the sale in June, 1824, between Henry Donnel and Edward Staples. Donnel, for the consideration of one dollar, was to have an interest in the one-half of the William Green and other tracts. Mr. Donnel was an experienced surveyor and woodsman; directly after this arrangement, he was struck with paralysis, and died in 1826. The record furnishes no evidence of any other act of Henry Donnel. It is in evidence that, directly after young Witman paid the taxes and costs, and lifted the treasurer's deed, Charles G. Donnel, the son of Henry, and a gentleman of respectable standing at the Northumberland bar, called on Weiser about these deeds, and, as proved by Weiser, inquired whether Mr. Witman did not get a deed from him that had been made out for Staples. Weiser replied in the affirmative, when Mr. Donnel requested him not to part with any of these Staples deeds to anybody else. He said he was going to Philadelphia, and he would see whether he could find Staples ; that he had an interest in the lands. Weiser told Donnel that he had given up the deed to Witman, as he said the land belonged to his father, and he had paid him the taxes and costs. After this, Judge Donnel went to Philadelphia, and on the 31st of October, 1829, he obtained a deed from Staples for the William Green, and for four other tracts, for the consideration of $103.74. On the 24th of August, 1829,

Charles G. Donnel gave his note, payable in a year, to Weiser, and lifted the memorandum of Staples for the $59.57.

The whole evidence in the cause demonstrated that Judge Donnel knew of the Orphans' Court sale, of Witman's paying the taxes and costs, and of his lifting the deed before he had applied for the sale to pay the debts of his father. He knew that the treasurer's deed never could be delivered either to him or to Staples for the William Green tract.

The bills of exceptions to evidence were either abandoned, or the argument was deemed by the court unworthy of further notice.

An error has been assigned, by leave of the court, immediately before the argument commenced, that the limitation of five years in the second section of the act of 1804 (Purd. 1136), is a bar to the plaintiff's right to recover, the suit not having been brought within five years after the sale to Staples. We are unable to discover that this limitation can be applied to the case before us, having held that the title of Judge Witman never was divested, nor vested in Staples or his alienees.

Judgment is affirmed.

GIBSON, C. J., and BELL, J., dissented.