Henry C. Taylor, claiming to have purchased real estate in Genesee county at the May, 1932, tax sale, filed a petition for a writ of assistance directed to the sheriff of that county to remove the *Page 54 
occupants from the lands claimed and put him in possession thereof.
He claims he paid at such tax sale $152.17 for delinquent 1928 taxes and $141.79 for delinquent 1929 taxes and received a deed from the auditor general September 20, 1932, of the property for the 1928 taxes, and holds the county treasurer's certificate for the 1929 taxes. He alleges George W. Chase was the owner of the property and died October 12, 1914; that George W. Chase, Jr., was appointed administrator November 12, 1914; that October 27, 1932, notice was served by him, as purchaser at the tax sale, upon George W. Chase, Jr., administrator, and upon Robert J. Chase, tenant and occupant of the premises; that such parties failed to redeem the premises from the tax sale; July 3, 1934, demand for possession was made upon Robert J. Chase who failed and neglected to vacate and turn the premises over to petitioner. The petition asked for an order directed to George W. Chase, Jr., and Robert J. Chase to show cause why a writ of assistance should not be granted, and for such writ.
Defendants appeared and by way of answer say there was no valid tax sale in the county of Genesee in May, 1932. They allege that, though petitioner bid in the premises by him claimed for the taxes of the years mentioned, he failed to comply with the statute governing such sales by failing to pay the amount of his bid to the county treasurer within 24 hours after the time of making such bid, but instead made payments on this and other bids in instalments, and as a result such bids were void and of no effect.
The sale was made by the county treasurer in pursuance of 1 Comp. Laws 1929, § 3462, as amended *Page 55 
by Act No. 71, Pub. Acts 1931, which statute provides that each parcel described in the decree shall be separately exposed for sale for the total taxes, interest and charges, and that sale shall be made to the person paying the full amount charged against such parcel, and accepting a conveyance of the smallest undivided fee simple interest therein, the sale to be held at the county seat, at the office of the county treasurer or at such convenient place as shall be selected by him, and shall be subject to the taxes assessed subsequent to taxes included in the decree and for the year for which the sale is made.
"The county treasurer may, in his discretion, require immediate payment of any person to whom any parcel of such land may be struck off, and in all cases where payment is not made in twenty-four hours after sale, he shall declare the bid canceled and sell the land again; and any person to whom any parcel of land shall be so struck off neglecting for twenty-four hours after the close of such sale to pay to the county treasurer the amount of such bid, shall forfeit to the State five times the amount of such bid, and costs of suit therefor."
There is no claim Taylor tendered cash in payment of his bid or bids within 24 hours. He and his representatives at the sale were ready, able and willing to pay the amount of their several bids for the lands purchased, and offered so to do. But the county treasurer said the books in his office were so muddled on account of the large number of redemptions at the last minute, his mail was unopened, checks for payment of taxes had not been credited as yet on the books, and he could not very well accept the money until he was able to straighten up his books. Toward the close of the sale, and at the close of the sale, Taylor's representative went to the *Page 56 
county treasurer and said he wanted to settle up for what he had purchased, and the county treasurer again said he had not been able to catch up in the work, and
"He could not say whether we had bought what we thought we had bought or not until such time as he could re-check the books and certificates; he couldn't accept money for it."
It is a fair inference from this and the other testimony that Taylor and his representatives at the sale were ready, able and willing to pay for what they had bid upon, which had been struck off to them, but that the county treasurer would not accept payment and could not, and would not deliver certificates of sale to Taylor or to his representatives because he was not certain whether the taxes on any parcel bid upon by Taylor and struck off to him had been paid or not, on account of the congestion in his office.
It appears from a statement of counsel in the record, and is not controverted, that the number of descriptions being offered for sale for delinquent taxes in 1932 was approximately 19,000, while in prior years the number was 100 or 200 descriptions. This came in by way of a suggested explanation for the congestion, consequent confusion and lack of precise knowledge on the part of the county treasurer conducting the sale.
It is well settled that tax statutes have a dual purpose, to obtain that revenue which is indispensably necessary to enable the government to function, and to prevent the confiscation of the property of the taxpayer by proceedings which take such property from him in violation of the statute. The holdings of this court in the construction of the statute ought to be brought into harmony with the great weight of authority. *Page 57 
What have other courts held upon the decisive question in this case? Is their reasoning grounded upon any fixed principle of law which may be applicable to the case at bar?
Tax statutes similar to ours are in force in many States. This court early recognized that
"Some parts of the tax law are directory, while others are mandatory * * * what the law requires to he done for the protection of the taxpayer is mandatory, and cannot be regarded as directory merely." Clark v. Crane, 5 Mich. 151, 154 (71 Am. Dec. 776).
In Torrey v. Millbury, 21 Pick. (38 Mass.) 64, Chief Justice Shaw said:
"One rule is very plain and well settled, that all those measures, which are intended for the security of the citizen, for insuring an equality of taxation, and to enable every one to know, with reasonable certainty, for what polls and for what real and personal estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent, and if they are not observed he is not legally taxed, and he may resist it in any of the modes authorized by law for contesting the validity of the tax.
"But many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or noncompliance with which, does in no respect affect the rights of tax-paying citizens. These may be considered directory."
1 Cooley's Constitutional Limitations (8th Ed.), p. 158, says, in relation to statutory rules relating to taxation:
"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt *Page 58 
conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute."
"A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, and made with a view to the proper, orderly, and prompt conduct of business, is usually directory." 59 C. J. p. 1078.
"If the correct amount is assessed, no one will be injuriously affected, and, in order to invalidate the tax for noncompliance with a requirement that is directory, it must be shown that injury has resulted to the person assessed in consequence thereof." Fay v. Wood, 65 Mich. 390,398.
"Statutes fixing a time for the doing of an act are considered as only directory, where the time is not fixed for the purpose of giving a party a hearing, or for some other purpose important to him." Fay v. Wood, supra, 401.
"All that pertains to fixing the charge on his land, as well as the time and place of the sale of it for nonpayment of taxes due on it, concern and affect him, and he may justly and successfully complain of any material disregard of law as to these matters. But, with the person who purchases at the sale, or with the precise day or hour when the bid made at the sale is paid, he has slight or no direct concern. If the sale, made necessary by the neglect or refusal of the delinquent taxpayer to discharge his duty to the State by paying into the treasury his proportionate part of the revenues required to carry on the government, is had at the proper time and place, and in the proper manner, and the money bid is seasonably paid to the appointed officer, and before he is required to file deeds *Page 59 
to individual purchasers with the chancery clerks, by the first day of the month next following such sales and purchases, or to make settlements with the State for cash received by him on account of such sales, how is the defaulter interested in or affected by payment of a bid at the very instant of the fall of the auctioneer's hammer? So far as he is concerned, it does not matter whether the cash be paid on the spot, or the next hour or the next week." Judah v. Brothers, 72 Miss. 616, 621
(17 So. 752, 33 L.R.A. 481).
The language of the statute under consideration, though mandatory in form, is to be governed by the ordinary rules of statutory construction. 59 C. J. p. 1081.
"To acquire title under a tax sale the purchaser must pay the amount of his bid, to the officer authorized to receive it within the time limited by statute for that purpose." 61 C. J. p. 1211.
Holt v. Weld, 140 Mass. 578 (5 N.E. 506), involved the validity of a tax sale under a statute which provided that,
"If after the sale of real estate for the payment of taxes a purchaser thereof fails to pay the collector within ten days the sum offered by him and to receive his deed, the sale shall be null and void, and the city or town shall be deemed to be the purchaser of the estate."
The court said:
"If a purchaser does not pay the collector within ten days, the collector must, in order to comply with the statute, make a deed to the city or town; and a deed to the purchaser is void. The statute does not give the collector any option in the matter."
The text of Corpus Juris last above quoted, so far as the question involved is concerned, is based upon the opinion inHolt v. Weld, supra, which gave the *Page 60 
collector, in case of nonpayment, no discretion or option, but directed, in case of nonpayment of the amount of the bid within the statutory period, the sale should be void and the city or town in which the land was situated should be deemed the purchaser of the estate, and the land should be deeded to such city or town. This rule is not in conflict with Turk v. McCoy, 14 Serg. Rawle (Pa.), 349; Donnel v. Bellas, 10 Pa. 341;Haisley v. Somers, 13 Ont. 600; Longfellow v.Quimby, 29 Me. 196 (48 Am. Dec. 525); Anderson v. Rider,46 Cal. 134; Maina v. Elliott, 51 Cal. 8; Green
v. Hellman, 61 Neb. 875 (86 N.W. 912); Henderson v. HughesCounty, 13 S.D. 576 (83 N.W. 682); Leavitt v. S.D. Mercer Co.,64 Neb. 31 (89 N.W. 426); Minnesota Debenture Co. v.Scott, 106 Minn. 32 (119 N.W. 391), Ure v. Bunn, 3 Neb. (Unoff.) 61 (90 N.W. 904); Sheldon v. Steele, 114 Iowa, 616
(87 N.W. 683); Board of Supervisors of Pottawattamie County v.Stone, 212 Iowa, 660 (237 N.W. 478); Judah v. Brothers, supra;
1 Blackwell on Tax Titles (5th Ed.), §§ 509, 514; 3 Cooley on Taxation (4th Ed.), § 1435; 61 C. J. p. 1211.
In Turk v. McCoy, supra, it is said:
"The owners are necessarily aware of the nonpayment of their taxes, that the act fixes a particular day for the sale of the land, and, moreover, that they have two years to redeem their land. If, then, they are unable to show payment of their tax, or that they have redeemed their land within two years, what right have they to expect favour in a court of justice? Why should the bona fide purchaser be deprived of his land, upon a mere technical objection, or on noncompliance, on the part of the commissioners, with some of the formalities of the act, or a mistake of the treasurer in the amount of costs?" *Page 61 
In Donnel v. Bellas, supra, the statute of 1817 provided it should be the duty of the purchaser or purchasers at treasurer's sale, as soon as the property was struck down, to pay the amount of the purchase money or such part thereof as should be necessary to pay the taxes and costs; and, in case the amount was not paid forthwith after the property was struck down, the sale might be avoided and the property again set up for sale by the treasurer. The court said this act gave the treasurer the discretion, if the money was not forthwith paid, either to set up and sell it again or bring his action before he acknowledged the deed.
"Here the treasurer did not adhere to the act of assembly; he trusted Staples, and took his written, memorandum to pay when the deed was acknowledged. He never paid, and never received the deed."
The trusting him by the treasurer, the purchaser having absconded without having paid the amount of his bid, or received a deed, "surely gave him no title.
In Haisley v. Somers, supra, the statute provided the sale should be for cash. Cash was not paid at once. The court said (603):
"It seems that the purchase money was not paid for a week or two after the sale, and it is said that the sale must be for cash. I think it was a cash sale, and if the treasurer was satisfied to let the payment stand over for a short time it did not make it the less a cash sale."
In Longfellow v. Quimby, supra, it is said (203):
"The objection to the validity of the sale of the land, by the county treasurer, has no foundation in fact. The sale was on the usual terms for cash, and *Page 62 
there was no understanding, that the treasurer should not call on the purchaser for the money till it was wanted. After the sale, the plaintiff paid a part of the consideration and gave his note for the balance, the treasurer having no occasion for the money, and considering the note as good as the common currency of the country. This is unlike a case, where a stipulation is made before the sale, that a credit is to be given to the purchaser. Here the treasurer, as such, was accountable for the whole sum for which the land was sold, and the taking of the note for a portion of the purchase money was a matter between the plaintiff and himself, in his private character."
In Anderson v. Rider, supra, lands were sold at tax sale September 28, 1868. The purchase money was not paid the sheriff until January 13, 1869. It was contended the deed from the sheriff to the purchaser for the premises was void, the purchase money not having been paid until 3 months and 15 days after the sale, the governing statute providing the purchase money must be paid before 10 o'clock a. m. on the day following the sale. The court said:
"Nor was the sheriff's deed void because the purchase money was not paid until several months after the sale. There was no proof that there was any stipulation for credit between the sheriff and the purchaser, or that it was not a cash sale. If the purchase money was not promptly paid, the sheriff might have resold the property at the risk of the purchaser; but the mere fact that some delay occurred in the payment of the purchase money, which was accepted by the sheriff, does not vitiate the sale and render the deed a nullity."
In Maina v. Elliott, supra, the property was sold August 30, 1869, and the purchase money was not paid until February 12, 1870. There was no agreement *Page 63 
that the sale should be on credit. The court said:
"In Anderson v. Rider (46 Cal. 134, 137), it was held that the sheriff's deed was not void because the purchase-money was not paid for several months after the sale, there being — as in the case at bar — no stipulation for credit between the sheriff and purchaser.
"The certificate of purchase, which was executed when the money was paid, took effect by relation as of the date of the sale, and the deed of the sheriff, made six months after the sale, was not void. But the doctrine of relation can never be made operative to deprive one of a substantial right, which could not have been effectively exercised until after the execution of the instrument or happening of the event, which is held to take effect at or to have relation to the prior date."
In Green v. Hellman, supra, the premises were sold by the county treasurer November 19, 1892, and payment of the bid was made April 10, 1893. It is said:
"The first contention of appellant is that the tax sale to Connett is absolutely void, and no right of subrogation exists thereunder because the purchaser did not pay the amount of the bid until several months after the date of the sale. Article 1, chap. 77, § 111, Comp. Stat., provides that the person purchasing real estate at a tax sale 'shall forthwith pay to the treasurer the amount of taxes and costs charged thereon, and on failure to do so, the said parcel shall at once again be offered as if no such sale had been made.'
"It is the duty of a purchaser at a sale of real estate for taxes to immediately pay the treasurer the amount of his bid, and if he did not do so, the property is again offered as if there had been no sale. The failure, however, of the county treasurer *Page 64 
to comply with the foregoing provision by offering the lands again for sale did not invalidate the taxes." (CitingHenderson v. Hughes County, 13 S.D. 576 [83 N.W. 682].)
In Henderson v. Hughes County, supra, certain lands were sold at tax sale to Hughes county. All the memorandum that was made of these sales at the time of sale was a note on the tax list indicating that the county was the bidder. This memorandum was made after the sale as soon as the county treasurer could get to it. It may have been 10 days after the sale. There was no memorandum made on day of sale. As soon as the sale closed, they commenced to write the certificates. They were written up in rotation. The taxes for which these sales were made had never been canceled on the tax duplicate or record. The certificates were written up four or five days afterwards.
"Considered in connection with the presumption that, in the absence of evidence to the contrary, the treasurer properly performed his duties, no fact is established which renders the sale invalid, or which deprives the county of all the rights, both legal and equitable, that any person could acquire by reason of a tax sale (p. 594)."
In Leavitt v. S.D. Mercer Co., supra, the opinion on rehearing was by Commissioner Pound, now dean of the Harvard law school. It is said:
"The district court found that the delay in payment 'was owing to the fact that the public tax sales for said year were so large that the treasurer, with the clerical force at his disposal, was unable to make out the sale in question at an earlier date, making out said tax sales in their regular order,' and that the 'said delay was not chargeable to the purchaser at said sale.' The word 'forthwith,' as used in the statute, must be given a reasonable construction *Page 65 
consistent with the exigencies of business. So construed, we think it means as soon as the county treasurer, in the reasonable course of the orderly conduct of the business of his office, is prepared to receive and properly receipt for the moneys to be paid. To require the purchaser to pay before the treasurer can receive would be to hold that there can be but very few valid sales, whenever there are a large number to be made. A similar view was taken in construing the word 'immediately,' in Huff v. Babbott, 14 Neb. 150 (15 N.W. 230). * * * It must be apparent that there is a limit to the number of payments any treasurer and his deputies can receive in any one day under these statutory requirements. We ought not to ask purchasers to pay faster than the proper officials can take their money."
In Minnesota Debenture Co. v. Scott, supra, the sale was attacked because bids were made November 15, 1906, on which day the sale closed, but the money was not paid to the treasurer until the 16th. The auditor did not stop to make out the certificate and receipt for the consideration when the bid was made, but went on with the sale. It is said:
"The statute provides that the purchaser shall forthwith pay his money, and that the officer conducting the sale shall make the certificate and that the treasurer shall attend the sale and take the money. * * * On November 15, before the money was paid, there was testimony that plaintiff asked to redeem, was ready and able to redeem, called for statements, and was refused. These considerations are not sufficient to avoid the sale. The provisions that the purchasers are required to make immediate payment and that they shall forthwith pay must be reasonably construed. It appears the property was bid in 'just before the close of the day, nearly five o'clock,' at which hour the county offices closed. The *Page 66 
payment on the following day was 'immediate' — 'payment forthwith' — within the fair construction of those terms. The money was actually paid into the treasury."
It was held the certificates of sale were valid.
In Ure v. Bunn, supra, the opinion was by Commissioner Pound. It was said:
"As to the validity of the tax sale, the evidence shows that the treasurer, with the clerical force at his disposal, and because of the large number of sales to be made, could do no more on the day of sale than make a memorandum of the name of the purchaser. As soon as he was able to comply with the requirements of the statute in due course of the business of his office, he notified the purchaser, and the money was paid. When the delay in paying the taxes and costs is due to inability of the treasurer to comply with the requirements of the law on the day of sale, and the money is paid as soon as the treasurer is able to receive and properly receipt for it, the statute is sufficiently complied with, and the sale is valid."
In Sheldon v. Steele, supra, the statute provided the purchaser shall forthwith pay to the treasurer the amount bid, and, on failure to do so, the land shall at once be again offered as if no such sale had been made.
"The payment is to be made 'forthwith;' that is, 'immediately; without delay; directly; as soon as the thing required may be done by reasonable exertion confined to that object.' Webster. In view of the provisions for again offering the property, it cannot be doubted but that the intention of the statute is that payment for each parcel or part shall be made immediately upon the part or parcel being sold. * * * The defendant having failed to pay for these parcels at the time they were struck off to *Page 67 
him, it was the duty of the plaintiff to at once offer them again, and he elected to treat it as if payment was made at the risk of defendant's refusing to pay."
In Board of Supervisors of Pottawattamie County v. Stone,supra, where the purchaser bid, and the property was struck off to him, and he paid therefor when the certificate of sale was made out, it was said:
"The appellants urge that the amount of the purchaser's bid was not paid by the purchaser to the county treasurer 'forthwith,' as required by the statutory law. As against this contention of the appellants, it is shown that the purchaser appeared at the treasurer's office at the time of the 'scavenger' sale and made his bid, and, upon the certificates of sale being made out by the treasurer, the amount of the bid was paid. We think that this was sufficient to comply with the statutory law."
In Judah v. Brothers, supra, lands were to be sold at tax sale for cash. There was no agreement or understanding between the tax collector and the appellee that any credit should be given the latter by the former. The tax collector, regarding the appellee as good, solvent and reliable, did not stop the sale generally when the lands embraced in this suit were bid off and knocked down to the appellee and execute a conveyance and collect the money on the instant, but, for his own convenience as well as that of appellee, waited until the sales had been completed when, three or four days after such completion of his sales, he received the amount of the bid. This was his custom in making tax sales and collecting money from successful bidders. This conveyance from the collector to appellee was filed in the office of the chancery clerk before the middle of *Page 68 
March, 1892, where it remained for more than 12 months and until the period for redemption had expired, when, March 13, 1893, the same was recorded in the deed books of that office. In October, 1893, appellee exhibited his bill in the chancery court, and prayed confirmation of his tax title. Appellant answered and denied that appellee paid the tax collector the amount of his bid for these lands, or any other sum, in cash, on the day of the sale of the lands. There is an exhaustive discussion of the scheme and policy of the revenue law of the State of Mississippi. It is said:
"It is urged upon us that code of 1880, § 527, declares an inflexible and unambiguous rule, when it says: 'If the purchaser shall not immediately pay, * * * the collector shall offer the land again,' etc. What is the end to be attained? What the purpose to be subserved by this section? Clearly, not the preservation of the delinquent owner's title nor the conservation of any interest of his. We see here the ever-present purpose of raising its revenues by the State by securing a second bidder, who can and will pay his bid if the first bidder has neither the ability nor the will to pay the bid which he has made. The declaration, in effect, is, if the State can secure a second bidder who will bid enough to make good the delinquency of the owner in nonpayment of his taxes, the first bidder may be released from compliance with the contract made by his bid; but if no second bidder can be found, the first bidder shall be compelled to pay his bid, and, that being done, he shall have the title to land to which his bid entitles him. The object of the section is to make sure the getting of the revenue by subjecting the property to taxation as swiftly as may be done. It makes the collector master of the situation by giving him some simple and elementary instructions and directions for his guidance in the conduct of tax sales. He is *Page 69 
informed that he may not accept every bid, and especially when made by one known to him to be irresponsible and untrustworthy, and thereby delay the collections of the public revenues; but, if he demand payment on the spot and refusal is met, he shall at once offer the lands again for sale to other bidders. If the first bidder is known to the collector to be solvent and reliable, the sale of other lands need not be delayed by stopping to make and acknowledge and deliver a conveyance to this first bidder, and to receive the amount of his bid; but if the first bidder is of such capacity and character as to make the collector unwilling to rely on him, then the collector should stop the sale, demand the amount bid, and, on default in payment, again offer the land. The great object, the sole object, is to get in the taxes due. It is the interest of the public alone that was consulted in enactment of this section, and the delinquent owner has no sort of concern in it. * * * If the money were paid on the instant of the fall of the hammer, and a deed were also thereupon instantaneously to be executed to the bidder, the delinquent owner would not be affected thereby. He can only redeem from the chancery clerk, and this he can do only after the filing of the deeds in his office on April 1st. Whether payment be made on the instant or the next day or the next week, is wholly immaterial to him who can only redeem after April 1st. But while immaterial to the defaulting taxpayer, it is matter of great interest to the State that lands of delinquents be sold, purchasers be found, bids made good and the public revenues collected by April 1st. If this be done, the end of the law has been accomplished and the State fully satisfied. The word 'immediately' in the section is thought by counsel to demand payment of a bid on the instant. This view is too literal. The word immediately is a relative term, and has relation to the course of business with reference to which it is used. When the connection in which and *Page 70 
the object for which it is used in the statute under consideration are considered, we entertain no doubt as to its being directory and not mandatory. It is designed for the guidance of the collector, with a view to the end to be accomplished, and when that has been done, the object of the law has been met. The section is intended to direct the collector as to the proper method of procedure in making sales by which the State's revenues would with almost absolute certainty be secured. But absolute compliance with the strict letter of the section, or reasonable compliance with the spirit and purpose of the section, by which, in either case, the end sought is attained, will satisfy the law, and whether absolute compliance with the strict letter, or reasonable compliance with the spirit and purpose of the act be adopted by the officer, in no way affects the rights of the defaulting taxpayer. * * *
"It is earnestly insisted by counsel for appellant that the sale of the lands in controversy by the collector to the appellee was a credit and not a cash sale. From the views already advanced by us, it necessarily follows that we cannot adopt this contention of counsel. The evidence makes it certain that there was no agreement or understanding that the appellee should be given credit. On the contrary, the sale was announced to be for cash, and so the appellee and the collector understood perfectly. For his own convenience, in part, the collector did not execute the deed and receive the money from the bidder for three or four days after the day of sale. But this did not make the sale one for credit. As already declared by us, the statute is directory, the State has secured the taxes due by the delinquent on these lands, and the purpose of the law has been accomplished. No rights of the taxpayer were sacrificed and his interests were not injuriously affected by the course pursued. See Longfellow v. Quimby, 29 Me. 196
(48 Am. Dec. 525); Anderson v. Rider, *Page 71 46 Cal. 134; Blackwell on Tax Titles, 307; Black on Tax Titles, §§ 108, 109."
In 1 Blackwell on Tax Titles (5th Ed.), § 514, it is said:
"Where there is no agreement, before the sale, between the officer and bidder, that a credit shall be given for the whole or any portion of the bid, and after the sale the purchaser pays a part of the purchase-money, and gives to the officer his note or other obligation for the payment of the residue at a future time, the sale will be maintained."
In support of this statement, the case of Longfellow v.Quimby, supra, is cited and quoted from, but the text continues:
"The same principle would undoubtedly apply where no portion of the purchase-money is paid, but the officer accepts the promise of the purchaser in satisfaction of the bid. The officer in that case would be liable to his superiors, and must seek his remedy upon the promise; and if no agreement to sell upon credit appears to have been made before the sale, he will be permitted to recover."
In 1 Blackwell on Tax Titles (5th Ed.), § 509, it is said:
"The sale must be for cash unless credit is expressly authorized. If the credit is part of the agreement of sale it is absolutely void; but extension of credit to the purchaser merely as an act of the officer after the sale and not as a part of it, does not avoid the proceedings."
In 3 Cooley on Taxation (4th Ed.), § 1435, it is said:
"Statutes sometimes require the price to be paid 'immediately' or 'forthwith,' but these provisions are construed more or less liberally, and a statute requiring the price to be paid 'immediately' has *Page 72 
been held directory and not mandatory. If payment of the amount bid is required to be made 'immediately' and 'forthwith,' it is sufficient, when the sale is made just before the close of the day, to make the payment the next day."
"Under a requirement that payment be made 'forthwith' or 'immediately,' it must be paid with reasonable promptness, and an inconsiderable delay will not invalidate the sale, especially when caused by the congestion of business in the treasurer's office." 61 C. J. p. 1211.
An examination of the authorities above cited leads to the following conclusions:
(1) The important thing, from the standpoint of the State, is that the sale of lands for delinquent taxes be conducted regularly and in accordance with the statutes so the State may receive the purchase price paid therefor at the sale which includes the taxes levied and assessed against the property;
(2) That the owner of the premises, at the time of the sale, having defaulted in the payment of taxes — neglected or refused to pay the amount levied and assessed against the property — which taxes so levied became a lien thereon, which lien has been foreclosed and a decree directing sale entered, when there is no offer to pay the taxes and no redemption or offer to redeem from the sale within the statutory time, after the service of the statutory notice upon the owner or occupant of the land, within the time prescribed by statute, the landowner and those in privity with him are in no position to claim they are injured by the failure of the county treasurer to collect the amount bid within 24 hours after the property is struck off at the tax sale;
(3) There was no arrangement between the county treasurer and the purchaser in advance of the sale for an extension of credit by the county *Page 73 
treasurer to the purchaser. The sale was to be made, and was made, in accordance with the statute which provided the sale should be for cash. The county treasurer did not stop the sale, when bids were made and the property struck off to a particular tax sale purchaser, and then and there issue the certificate of sale at once because it was impractical as an administrative act so to do. Whatever credit the purchaser at the tax sale received was obtained because the county treasurer refused to take the money and issue his certificate of sale for the land bid upon and struck off to the purchaser, though the purchaser was ready, able and willing to pay the amount of such bid;
(4) The language of 1 Comp. Laws 1929, § 3462, as amended by Act No. 71, Pub. Acts 1931, is to be construed as directory and not mandatory;
(5) When sales are made by the county treasurer and reported to the auditor general, the county treasurer is liable to account to the auditor general for the proceeds of such sales, even though he may have personally extended for his own convenience the time of payment of the amount of the purchaser's bid. That is a matter between the county treasurer, in his personal capacity, and the tax sale purchaser, and does not affect the county treasurer's liability to account to the auditor general for the proceeds of such tax sales;
(6) When a sale of lands for delinquent taxes has been regularly decreed and the lands regularly offered for sale and sold, the rights of the purchaser at such tax sale cannot be defeated by the failure or refusal of the county treasurer to accept the money at the precise time of sale, or within 24 hours thereafter, where, in good faith, in the absence of fraud, he accepts the payment of the purchase price and *Page 74 
issues his certificate of sale to the purchaser, and makes a report to the auditor general of such sale, and accounts and pays over the money received by him in the usual and ordinary way, where no effort on the part of the landowner is made to question the tax, redeem from the tax sale, or question its regularity until suit by the purchaser at the tax sale is brought to recover what is bought and paid for.
The decree of the trial court is reversed and a decree granted for petitioner.
NORTH, C.J., and EDWARD M. SHARPE, J., concurred with POTTER, J. FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred in the result.
The late Justice NELSON SHARPE took no part in this decision.