REAGAN *et al.* v. MCKIBBEN *et al.*

1. Under Comp. Laws, § 5090, Subd 4, providing that, when the motion for
   a new trial is made upon the minutes of the court, the specification of
   errors relied on must be made in the notice of intention, it is unneces-
   sary that such specification be set out in the bill of exceptions.

2. A notice of intention to move for a new trial, which contains specifica-
   tions of errors sufficient to call the attention of the trial court to the
   particular errors of law relied on, and which presents substantially all
   the questions discussed, is a sufficient statement thereof.

3. The findings of the trial court will be reversed only when against the
   clear preponderance of the evidence.

4. One who conveys his interest in a mining claim to another, in considera-
   tion of the latter taking charge of the property and paying him one-
   half the proceeds arising from working the mine, or a sale thereof, re-
   tains no equitable interest therein.

5. Defendant and three others were, in 1895, owners in common of a mining
   claim. After defendant had conveyed his interest to another, he dis-
   covered that his claim was too wide, leaving a small fraction on one
   side not located, and called the attention of the owners thereto, who in-
   structed him to locate it, which he did. Nothing was said about locat-
   ing it in trust for the company. Defendant divided the boundaries of
   the fraction by stakes, and he and a laborer did some work upon it, and
   one of the partners also did some work upon it. The evidence was con-
   flicting as to who sunk the discovery shaft. In 1896 the fraction became
   valuable. *Held*, that a finding that defendant located the fraction for
   himself alone, and not in trust for any one, would not be disturbed.

6. An agreement to locate a mining claim for the benefit or in trust for
   others, if made prior to the location, is valid, although not in writing.

7. An agreement to convey an interest in a mining claim, or a declaration
   of trust, not in writing after its location, cannot be enforced.

8. An offer to convey an interest in a mining claim to effect a compromise
   is inadmissible to prove that the same was located in trust for others.

9. In an action to compel defendant to convey an interest in a mining claim, claimed to be located and held in trust for a partnership, conversations between two of the members thereof in defendant's absence, relative to its location, are inadmissible

10. In an action to compel the conveyance of an interest in a mining claim, evidence that a third person was defendant's agent is properly excluded, where the declarations made by him to bind defendant, as agreeing to convey the same, were not in writing, nor authorized by defendant in writing.

(Opinion filed Oct. 18, 1898.)

Appeal from circuit court, Lawrence county. Hon. A. J. PLOWMAN, Judge.

Action by James B. Reagan and another against John C. McKibben and another to compel the conveyance of certain mining property. From a judgment in favor of defendants and an order denying a motion for a new trial, plaintiffs appeal. Affirmed.

The facts are stated in the opinion.

*Granville G. Bennett* and *J. B. Moore* for appellants.

*McLaughlin & McLaughlin*, for respondents.

CORSON, P. J. This was an action on the equity side of the court to compel the defendants to convey to the plaintiffs an undivided one-half interest in a mining claim in Lawrence county, known as the "McKibben Fraction Lode," and for an injunction. The cause was tried by the court, and judgment entered in favor of the defendants. A motion for a new trial was made and denied, and from the judgment and order denying a new trial the plaintiffs have appealed.

The respondents call the attention of the court to the fact that the errors of law complained of are not particularly speci-

fied in the bill of exceptions, and contend that they cannot be considered by this court on this appeal. As the motion for a new trial was made upon the minutes of the court, the specification of the particular errors relied on is required to be made in the notice of intention. Comp. Laws, § 5090, subd. 4. In the notice of intention the only specification of errors of law is, "excluding and admitting evidence upon the trial against plaintiffs' objections and exceptions, and which objections and exceptions were duly made and taken at the trial." This, standing alone, would clearly be insufficient as a statement of the particular errors of law relied on. But in other parts of the notice of intention there are more particular specifications of certain rulings of the court in excluding and striking out evidence, which were sufficient to call the attention of the trial court to the particular errors of law relied on, and which present substantially all the questions discussed by appellants' counsel in their brief.

The contention of the plaintiffs is that the defendant McKibben, in connection with the plaintiffs and one Danielson, was a co-owner of the Wasp lode and other claims adjoining, and that, upon a survey of the Wasp, it was found to be several feet too wide as staked, and consequently there was a fraction of unlocated ground, which was located by defendant McKibben under the name of "McKibben Fraction," in his individual name, but for the benefit of the Wasp Company, in which the plaintiffs had a one-half interest. The defendants meet this contention by two propositions: (1) McKibben was not an owner in the Wasp claim at the time he made the McKibben location, and had not been for several months prior thereto. (2) McKibben did not locate the Mc-

Kibben claim for the benefit of any one but himself, and had never agreed in writing to convey to the plaintiffs any interest therein. The appellants do not claim that McKibben ever agreed in writing to convey to them an interest in the McKibben location, or that he had declared any trust in their favor in writing.

The only question, therefore, for our consideration, is as to whether or not the facts and circumstances attending the location raise a trust in favor of the plaintiffs in the property, such as a court of equity can enforce, in the absence of any written agreement or declaration of trust in writing. The court found that McKibben, in January, 1895, sold his interest in the Wasp and adjoining claims to one Snyder for a good and valuable consideration. He further found that "in September, 1895, McKibben duly located the McKibben Fraction lode, for himself alone, and not in trust for the use and benefit of the said plaintiffs, or either of them, or any one else; that the location of the said McKibben Fraction lode was not made pursuant to any agreement or understanding between said plaintiffs and the defendant Edward Danielson, or any one else, that it was located in the name of John C. McKibben, for himself and in trust for the owners of the Wasp lode and those interested therein, nor for their use and benefit, nor that either or all of said owners, to-wit, James B. Reagan, Catherine Evans, Edward Danielson and John C. McKibben, should each have an undivided one-quarter interest therein; that there was no agreement or understanding that the said John C. McKibben should or would upon demand, or in any other way, by good and sufficient deeds in writing, or in any other manner, convey to said plaintiffs any interest in the McKibben Fraction lode."

The appellants contend that these findings are not supported by the evidence, and are against the weight of the evidence. The evidence as to these two findings will be first considered.

In cases tried by the court below without a jury this court is authorized to review the evidence when exceptions have been duly taken (§ 5237, Comp. Laws); but "it will only reverse the decision of the trial court when there is a clear preponderance of evidence against the decision of the court below" (Randall v. Burke Tp.. 4 S. D. 337, 57 N. W. 4). The evidence that McKibben had no legal title to any part of the Wasp lode, in September, 1895, when he made the location of the McKibben Fraction, is undisputed; but the appellants insist that he still had an equitable interest in that mining property, and that Snyder held the property in trust for him. It appears from the evidence in the record that, at the time McKibben conveyed his one-fourth interest in the Wasp and adjoining claims to Snyder, Snyder as the consideration agreed in writing to go to the Black Hills from Cedar Rapids, Iowa, and take charge of the property, and pay McKibben one-half of the proceeds arising from working the mines, and one-half of the amount received on a sale of the property. Under this agreement, we are of the opinion that McKibben retained no equitable interest in the property. In case Snyder failed to perform the contract on his part, the only remedy McKibben would have would be an action for breach of the contract. The conveyance to Snyder created no trust relation between the parties in the property itself, and the court, we think, very properly found that, at the time McKibben made his location, he had no interest in the mining claims as such.

We have examined the numerous authorities cited by the learned counsel for appellants, but they do not seem to us to

sustain the theory contended for, where the property has been actually purchased by the grantee. Assuming, therefore, without deciding, that, if the location of the fraction was made by McKibben while an equitable owner, in the Wasp, he might have been held as trustee, it is clear that he could not be so held in this case, as he had no interest, legal or equitable, at the time the McKibben lode was located, in the Wasp location.

Appellants further contend that, if McKibben had no interest in the Wasp claim at the time he made the location of the fraction, he did in fact make the location for the benefit of the owners of the Wasp, and that the location was made in his name as a matter of convenience only. But the evidence does not sustain this theory. McKibben seems to have been the first to discover the existence of this fraction, and called the attention of Danielson, Snyder, and Reagan to the fact.

What then occurred is thus detailed by the four persons present: Mr. McKibben testifies: "I went up to the cabin. The Wasp company were there,—Mr. Danielson and Mr. Reagan and Mr. Snyder. Mr Evans had died before this time. I said, 'There is a fraction, and the Wasp ground is too large.' I told them Mr. Wilson had told me so. They told me to go locate it if I wanted it. They all spoke up." Mr. Reagan testifies he said:' 'We will locate that there. 'John' [addressing McKibben,] you go and locate that. and I will dig the discovery." Mr. Danielson testifies: "I says, 'Go and locate that fraction.' I told McKibben to go and locate it. That is all I said. 'You go and locate that ground, some of you. I got to go down to the smelter.'" Mr. Snyder testifies: "McKibben came in and says: 'There is a fraction; Wilson found a fraction,' I told

him to go and locate it, and Mr. Danielson told him the same. Not a thing, not a word, was said about locating it for anybody or in trust for anybody." McKibben thereupon proceeded to post a notice upon the ground in his own name, which Reagan signed as a witness.

It will be observed that no witness testifies to any direction to McKibben to locate the ground for the company, or to any agreement on the part of McKibben that he would so locate it for the benefit of any one other than himself. McKibben subsequently caused the notice to be recorded. He also defined the boundaries of the claim by stakes. As to who sunk the discovery shaft; there is a conflict in the evidence. McKibben seems to have located the place for it and did some work upon it. Reagan also did some work, and a laborer paid by McKibben did some. But little work appears to have been performed on the claim prior to July or August, 1896, when Reagan and Mrs. Evans claimed they were entitled to a one half interest in the location. At that time this fraction was found to be valuable by reason of the shoot of ore discovered in the Wasp ground taking the direction of the fraction.

There was evidence received under objections, and subsequently stricken out by the court, tending to prove that McKibben, in person and through Snyder, offered to convey to Reagan and Mrs. Evans each one-eighth interest; but, as these offers were made in efforts to effect a compromise between the parties, the evidence was properly stricken out. The evidence was also inadmissible, and should have been excluded, it not being in writing, and objection being made upon that ground.

Eliminating from the case the evidence that was clearly inadmissible, we are of the opinion that the findings of the court below are fully sustained by a preponderance of the evidence. When it was found that the Wasp had been located in

excess of 300 feet in width, and the surveyor reduced the claim to that width the portion of the claim thus left outside of the new claim became vacant public land, subject to' location by any qualified person. The owners of the Wasp had no claim to the fraction superior to any other person. They could have located it in the names of the owners of the Wasp, or they could have arranged with McKibben to locate it in his name for their benefit or in trust for them. Such an arrangement or agreement, made prior to the location, would have been valid, though not in writing. Moritz v. Lavelle, 77 Cal. 10, 18 Pac. 103; Book v. Mining Co. 58 Fed. 106; Moore v. Hamerstag, 109 Cal. 122, 41 Pac. 805. But after the location was in fact made the claim became real property, and no agreement to convey it, or any part of it, would be binding upon McKibben, unless evidenced by writing subscribed by him or his agent thereunto authorized in writing. Comp. Laws, § 3617; Moore v. Hamerstag, *supra*: Belk v. Meagher, 104 U. S. 279: Forbes v. Gracey, 94 U. S. 762; Mining Co. v. Alexander, 2 S. D. 557, 51 N. W. 346. A declaration of trust must also be in writing, and subscribed by, the trustee or by his agent thereto authorized in writing. Comp. Laws, § 2795. No agreement on the part of McKibben, therefore, not in writing to convey an interest in the Fraction lode, or declaration of trust not in writing, can be enforced against him, when objection is properly taken to the admission of the evidence on that ground. In this case objection was duly made and the evidence, although admitted, was properly stricken out and disregarded by the court in making its findings of fact.

Taking the most favorable view of the case for plaintiffs, if there was any evidence of an agreement on the part of Mc-Kibben to make the location of the fraction for the benefit of the owners of the Wasp claim, it certainly did not preponder-

ate in favor of the plaintiffs; and it is clear that after the location was made McKibben did not, by any instrument in writing, agree or bind himself to convey to the plaintiffs any interest in the location, or to hold it in trust for them or either of them. This court, therefore, would not be justified in reversing the judgment of the trial court upon the ground that the findings were not sustained by the weight of the evidence.

The appellants contend that the court erred in excluding all the evidence in relation to McKibben's offers to convey to plaintiffs an interest in the McKibben location, as such offers tended to prove an acknowledgment on the part of McKibben of the original agreement under which the fraction was located. But, if the offers were made in an effort to effect a compromise, they were inadmissible for any purpose. We cannot agree with the contention of counsel that, had the evidence been admissable, it tended to prove what the original agreement was. All the agreement there was had been shown to the court by all the persons connected with the transaction. We discover no error in the ruling of the court in excluding this evidence.

The conversation between Reagan and Danielson, in McKibben's absence, was clearly inadmissible, and properly excluded.

The contention that the court erred in excluding the evidence of a conversation between Reagan and Snyder, in the presence of McKibben, is not tenable. It was an attempt to prove a verbal agreement on the part of Snyder that McKibben should convey to Reagan and Mrs. Evans an interest in the fraction. The agreement not being in writing, proof of it was inadmissible, over the objection of McKibben made upon that ground. The exclusion of evidence to prove that Snyder was the agent of McKibben was proper, as the evidence was

clearly immaterial, as Snyder's agreement, if he made any under the authority of McKibben would not bind him, not being in writing nor authorized by McKibben in writing. It is prob- ably true that Reagan supposed that McKibben was locating the claim for the benefit of the Wasp Company, and his acts in assisting McKibben in sinking the discovery shaft indicate that he understood that McKibben was so making the location. But unfortunately no agreement to so locate it was made by McKibben at the time or prior to the location, and there is nothing in the case to indicate that McKibben had any intention of locating the claim for the benefit of any one other than himself. The fact is not to be overlooked that when the location of this small fraction, seven feet in width by several hundred feet in length, was made, it had no appreciable value, and it is not surprising that but little attention was paid to the matter of this location at the time it was made.

It is clear that, under the facts disclosed by the record, the plaintiffs were not entitled to findings and judgment in their favor. They failed to show any agreement on the part of McKibben to locate the claim for the benefit of the owners of the Wasp lode, or for the benefit of any person other than himself. They failed to show any valid declaration of trust on the part of McKibben in favor of the owners of the Wasp or any other person. They failed to show any valid agreement on the part of McKibben to convey any interest in said location to the plaintiffs or to either of them. There was no involuntary trust, trust by operation of law, or resulting trust. It follows from these conclusions that the findings and judgment of the circuit court are correct, and the judgment and order denying a new trial are affirmed.