## HENDERSON v. HUGHES COUNTY *et al.*

1. Laws 1890, Chap. 37, Art. 15, declares that the city council of every city shall at its regular meeting in September of each year, or within 10 days thereafter, pass an ordinance to be termed the "annual appropriation bill," in which there may be appropriated such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of the corporation, which shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object and purpose. *Held* that, where a city council failed to pass an appropriating ordinance, such failure did not affect the validity of the tax levy thereafter made.

2. Const. Art 10, § 1, declares that the legislature shall restrict the power of municipal corporations to levy taxes and assessments, borrow money, or contract debts, so as to prevent the abuse of such power. Laws 1890, Chap. 37, Art. 10, § 7, declares that a city council shall at the first regular meeting in September, or within 10 days thereafter, levy a tax for general purposes sufficient to meet the expenses of the year, based upon an estimate furnished by the city auditor, or a committee of the city council. *Held*, that the legislature not having restricted the powers of municipal corporations, as directed by the constitution, a city had authority to make a levy of 15 mills for general purposes, 5 mills for interest and sinking fund, and 10 mills for school purposes in 1890.

3. Where there were illegal county bonds outstanding, and also valid outstanding bonds, a county tax levy for the purpose of paying bonds could not be held invalid by reason of the existence of the illegal bonds, since it would be presumed that the levy was made for the purpose of paying lawful obligation.

4. Comp. Laws, §1594, declared that the county auditor should prepare a duplicate of the tax list, and deliver the same to the county treasurer on or before the 1st day of November following the date of the levy for the current year. *Held*, that where an auditor failed to comply with the statute as to the date of delivering the duplicate, but the same was delivered before the taxes became due, his failure to comply strictly with the statute did not invalidate the levy.

5. Where the authorities of a municipal corporation exempted the property of a water works company from taxation, although such exemption was unauthorized under Const. Art. 11, §§ 5-7, the exemption did not invalidate the tax levy for those years for which such exemption was allowed, where there was nothing to indicate that the authorities of the city acted otherwise than in good faith.

6. Const. Art. 11, § 5, declares that property of the United States, the state, county and municipal corporations shall be exempt from taxation. Laws 1890, Chap. 37, Art. 5, § 1, Subd. 44, authorized a city to lease land for park purposes, and to pay for its use, and an amount equal to the taxes thereon. *Held*, that where a city exempted from taxation a tract of land belonging to a townlot company, and used and maintained the same as a city park, the exemption was not invalid, under Const. Art. 11, §§ 5-7, since the transaction in substance amounted to an exercise of the authority given by Laws 1890, Chap. 37, Art. 5, § 1, Subd. 44.

7. Laws 1891, Chap. 14, § 107, declares that, if any person bidding at a tax sale shall fail to pay the amount due, the treasurer may again offer the land or lots for sale if the sale is not closed, and, if closed, he may again advertise it specially by a notice posted for two weeks on the door of the court house. *Held*, that where on a tax sale by the county treasurer the bidder did not pay any sum to the treasurer, and the treasurer afterwards entered upon his duplicate that the sale was canceled for want of payment, his failure to enforce collection at the time stated did not invalidate the tax.

8. Laws 1890. Chap. 37, Art. 10, § 7, declares that a city council shall at the first regular meeting in September, or within 10 days thereafter, levy a tax for general purposes sufficient to meet expenses of the year, and, in addition thereto, an addition for the interest and sinking fund. *Held*, that where a city levy recited that the sum of 12½ mills was levied on each dollar of valuation of the taxable property of the city for the ensuing year, it was equivalent to the levy of that amount for general purposes, and hence the tax was not void for failure to comply with the statute.

9. The levy was not invalid in that there was made no levy for interest and sinking fund.

10. Laws 1891, Chap. 14, § 73, authorized a county to levy for sinking fund such rate as, in the estimation of the board of county commissioners, would pay for one year's interest on all outstanding debts of the county. but not to exceed 15 per cent on the principal. *Held* that, in the absence of any evidence to the contrary in proceedings to have the taxes declared invalid, it would be presumed that the board properly performed its duty in this respect.

11. On the tax sale by a county treasurer all the memorandum that was made of the sale at the time was a note on the tax list indicating that the county was the bidder; the only memorandum being made for certain lots was "Co.," and for other lots "see 1890 tax," and on the page referred to no memorandum except number of certificate, "288," which memorandum was made 10 days after the sale. *Held* that, in connection with the presumption that, in the absence of evidence to the contrary, the treasurer properly performed his duties, there was nothing rendering the sale invalid.

12. Comp. Laws, §§ 1155–1158, declares that the county tax levy shall be in the form of a certain number of mills on the dollar of valuation. *Held*, that where a county tax levy read "County General Fund, 6.006 mills," and subsequent charges were stated in the same manner as to the figures, it would be presumed that the record was intended to levy 6.006 mills on every dollar of valuation.

(Opinion filed August 29, 1900.

Appeal from circuit court, Hughes county. Hon. LORING E. GAFFY, Judge.

Suit by Sarah C. Henderson against Hughes county, the city of Pierre, and F. L. Fuller, as treasurer of Hughes county. Fron a judgment in favor of defendants and the order denying a motion for a new trial, plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*Dillon & Sutherland,* for appellant.

Where a record is not found in the office, and it is not shown that one was ever in existence, there is no presumption that one was made. Hall v. Kelly, 16 Mich. 135; Cass v. Bel-

lows, 31 N. H. 501; Davis v. Robinson, 9 N. H. 524; McElhenney v. City, 49 N. W. 705; City v. Lunby, 31 N. W. 790.

In the levy of taxes if part is invalid all is void. Wagor v. Bowley, 62 N. W. 293; 25 Am. & Eng. Ency. Laws, 191; Hebord v. Ashland, 55 Wis. 145; Low v. The People, 87 Ill. 385; Monges v. Douglas, 7 Cal. 65; City v. Brown, 106 U. S. 487; Tallolson v. Webber, 55 N. W. 838; Bailey v. Haywood, 38 N. W. 209; Peterson v. Kittredge. 3 So. 66.

Under Sec. 5 of Art. 13 of the Constitution, a levy of tax is a necessary condition precedent before bonds can issue by either the school board and city. Wade v. Trans, 72 Fed. 986; Millsops v. City, 60 Fed. 193; Berlin Iron Bridge v, City, 62 Fed. 882; Bank v Terrell, 14 S. W. 1003.

Where any part of the tax for which land is sold is illegal, the sale is void. Blackwell on Tax Title, § 320; Wells v. Austin, 53, Cal. 152; Bucknall v. Story, 36 Cal. 67; Hardenburg. v. Kidd, 10 Cal. 402.

A county must prove the legality of the tax in order to sustain its tax sale certificates. Cooley or Taxation, § 472; Hebord v. Ashland, 55 Wis. 145; Stewart v. Town, 104 U. S. 505; Low v. People, 87 Ill. 385; Smith v. Sac County, 11 Wall. 139.

By the statute of fraud the treasurer is required at the time of sale to make a written memorandum of sale. If he does not the sale and tax certificate is void. § 2850 Comp. Laws; People v. White, 6 Col. 75; Graig v. Godfray, 1 Cal. 415; Hicks v. Whitmore, 12 Wend. 548; Bomber v. Savage, 52 Wis. 113; Norris v. Blair, 37 Ind. 90; Evans v. Ashley, 8 Mo. 177; Eunis v. Walker, 3 Blackf. 472; Chapman v. Harfood, 8 Blackf. 82.

Where a tax upon land is void, illegal or unconstitutional, the owner has a remedy in equity. Bode v. New England, 40 N. W. 658; Frost v. Frick, 1 Dak. 127; Milwaukee v. Town, 29 Wis. 51; Dows v. Chicago, 78 U. S. 108; Cooley on tax, 777; Lyon v. Alley, 130 U. S. 177; Railway v. Cheyenne, 113 U. S. 516; Caxe v. Towne, 10 N. Y. 73; Weeks v. City, 10 Wis. 243.

*John A. Holmes,* for respondents.

When a municipality or its officers takes or threatens to take action in the creation of a debt or in the incurring of obligations which if allowed to go on, must eventually result in taxation, the only effectual remedy lies in enjoining such action *in limine.* Cooley on Taxation, 764; Crampton v. Tabnski, 101 U. S. 601; Atty. General, v. Detroit, 26 Mich. 263; State v. Sanderson, 54 Mo. 203; Mathis v. Cameron, 62 Mo. 504. Such remedy may be had upon the application of individual tax payers. Cooley on Tax, 767; Mandeville v. Riggs, 2 Pet. 482; Dodge v. Woolsey, 18 How. 331; Sharpless v. Philadelphia, 21 Pa. St. 147; Page v. Allen, 58 Pa. St. 338; New London v. Brainard, 22 Conn. 552; Webster v. Harminton, 32 Conn. 131; Lafayette v. Cax, 5 Ind. 38; Oliver v. Keightley, 24 Ind. 514; Terrett v. Sharon, 34 Conn. 105; Barr v. Demslon, 19 N. H. 170; Drake v. Phillips, 40 Ill. 389; Grant v. Davenport, 36 Ia. 396; Douglass v. Placerville, 18 Cal. 643.

An owner of land cannot have relief in equity from an illegal tax on such land unless he can show that his case comes under some acknowledged head of equity jurisdiction. Dows v. Chicago, 11 Wall. 108; Hannemuklo v. Georgetown, 15 Wall. 547; State Railroad Cases, 92 U. S 575; Savings v. Austin, 46 Cal. 416; Hanlon v. Supervisors, 57 Barb. 383; Heywood v. Buffalo, 14 N. Y, 534; McDonald v. Murphree, 45 Miss. 705;

McPike v. Pew, 48 Mo. 525; Weaver v. State, 39 Ala. 535; Cook Co. v. Chicago 35 Ill. 460.

No injunction can be granted to stay the collection of taxes until it is shown that all taxes rightfully due, have been paid or tendered, without demanding a receipt in full.    State Railroad Cases, 92 U. S. 575; Bank v. Kimball, 103 U. S. 732; Conway v. Waverly, 15 Mich. 257; Herry v. Milwaukee, 16 Wis. 185; Mills v. Charleton 29 Wis. 400; Taylor v. Thompson, 42 Ill. 9; Barnett v. Cline, 60 Ill. 205; Harrison v. Haas, 25 Ind. 281; Comm. v. Elston, 32 Ind. 27; Couldwell v. Curry, 93 Ind. 363; Adams v. Castle, 30 Conn. 404; Corbin v. Woodbine, 33 Ia. 297; Witsen v. Langendyke 32 Kas. 267; Hazaman v. Cloud, 19 Kas. 394; Frazer v. Sieben, 16 O. St. · 614; Montgomery v. Sayre, 65 Ala. 564; Arnold v. Supervisors, 43 Wis; Moore v. Wayman, 107 Ill. 192; Overall v. Rulizi, 67 Mo. 203; Johnson v. Roberts, 102 Ill. 655.

HANEY, J.    The plaintiff, who owned a two-thirds interest in certain real property in the city of Pierre, brought this action for the purpose of having certain taxes thereon declared void, and the cloud caused thereby removed.    The trial court decided that none of the allegations of the complaint were established except such as were admitted by the answer, and concluded that the action should be dismissed upon its merits. An application for a new trial having been denied, the plaintiff appealed.

The decision below is clearly sufficient to support the judgment.    Only one error at law occurring at the trial is assigned; hence, with that exception, the only inquiry is whether the complaint contains any material controverted facts which were

established by a clear preponderance of the evidence. Reagan v. McKibben, 11 S. D. 270, 76 N. W. 943; Randall v. Burk Tp., 4 S. D. 337, 57 N. W. 4. The first six paragraphs of the complaint are admitted. Devested of repetitions and conclusions, the remaining portions of that pleading contain the following issuable facts: (8) That the city made a levy of 15 mills for general purposes, 5 mills for interest and sinking fund, and 10 mills for school purposes in 1890; that such levy was not based upon any estimates of any character whatever; and that the city council did not make any appropriations of the levy, nor pass any ordinance as to such levy, tax, or appropriation. (9) That the county, in 1890, made a levy of 1.5 mills for sinking fund or bonds, and that all county bonds then outstanding were without consideration and void. (10) That the county auditor delivered a duplicate of the 1890 taxes to the county treasurer on December 15th of that year. (11) That the city council attempted to make an appropriation without an ordinance long after the levy was made in 1890; and that the tax of that year was not uniform on all property within the city limits, as the city exempted personal and real property from taxation. (12) That the county treasurer did on the —— day of November, 1891, pretend to sell plaintiff's property to one Eva Palmer, but did not deliver to said Palmer any written memorandum, nor did said Palmer pay any sum to the treasurer, and the treasurer afterwards entered on his duplicate that the sale was canceled for want of payment. (13) That on September 7, 1891, the city pretended to make a levy of 12½ mills for the ensuing year and 6.5 mills for school purposes; that such levy did not specify for what the same was levied; that it was not based upon any estimate furnished by the auditor or council;

and that the council did not make any appropriation of funds whatever, nor did it pass any ordinance appropriating funds, nor any ordinance levying the tax. (14) That in 1891 the county made a levy of 3.2 mills for bond or sinking fund. (15) That the said pretended levy of the said city and said county were each a fraud upon this plaintiff and all other tax payers of said county and city; that the value of the said property of this plaintiff at the time same should have been assessed was not to exceed the sum of $12,000, when said city and county pretended to tax said property at the valuation of $22,500; that in furtherance of the design to defraud this plaintiff said city did not make the levy required by law, but pretended to make a levy about 500 per cent. more than was legally required to pay the running expenses of the city, in order that it could make donations that were prohibited by law; that said city intended to pay out of said pretended assessment illegal and void charges such as are prohibited by the constitution and laws of this state, such as $1,500 for pontoon bridge, $20,000 for the state capitol building, for band $1,000, and for divers other illegal items, including interest on bonds in excess of the constitutional limit. (16) That the county auditor, with full knowledge of the aforesaid illegality of the city and county levy, extended this void assessment and levy, and delivered his duplicate to the county treasurer on December 20, 1891. (17) That about December 21, 1891, the city council pretended to pass an appropriation for said year as follows: Interest, $20,929; sinking fund, $5,000; improvements of streets and alleys and pontoon bridge, $1,500; salaries, $4,000; light and waterworks, $9,461; and contingent expenses, $1,200; that these appropriations

were made without any ordinance, and that the city had no interest, pontoon, bonds, sinking fund, improvement, light, or water works to pay. (22) That the county treasurer, on Novem ber 10, 1892, pretending that the sum of $1,641.56 was due as taxes upon plaintiff's property, offered the same for sale, but no one would bid, when he announced that the same was sold to the county for the amount due; that the county claims to hold the property by virtue of the aforesaid proceedings; that the treasurer did not make any certificate or memorandum in writing at the time of this pretended sale; that he acted as auctioneer, and, without any bid from anyone; anounced "the county;" that no entry was made as to the terms or purchaser; that the county has never paid any amount whatever, nor has the treasurer ever delivered to the county any certificate, nor has he demanded of the county the amount claimed to be due from the plaintiff for the taxes, or any amount whatever. (23) That during the years 1892 and 1893 the city caused to be returned to the county auditor a pretended list, wherein it was made to appear that plaintiff's property was assessed at the sum of $15,100 for 1892 and the sum of $13,680 for 1893, when in fact the value of the property did not exceed in either of those years the sum of $6,000; that in 1892 the city made a levy upon this fictitious value of 17 mills for general city purposes, interest on indebtedness and sinking fund, and 6 mills for school purposes; that in 1893 the city made a levy upon this inflated value of 17 mills for general city purposes and 9 mills for school purposes; that these levies did not specify for what they were levied; that they were not based upon any estimate furnished by the auditor or council nor did the city pass any ordinance making any levy or appropriating any

funds during either of those years. (25) That the said pretended levies of the city of Pierre and said county where each a fraud upon the plaintiff and all other property owners of said city; that the said plaintiff's property should not have been placed upon the assessment book at a greater value than $5,000, but said county and city pretended to tax said property as of a value of $13,680, and in furtherance of the design to defraud this plaintiff the said city did pretend to make a levy each of said years of 25 mills on each dollar of said fraudulent valuation, when in fact there was only required, to meet all the legal requirements of said city and its obligations, not to exceed 10 mills, which amount would have covered all of its legal obligations and running expenses of every description whatsoever; that said levy was made by said city to raise money to make unlawful donations to band, pontoon bridge, pay unlawful and illegal warrants, bonds, interest, rents, and debts of private corporations, and many other items too numerous to mention; and said county made said levy to pay interest on bonds where there never was any consideration for the bonds, and where said county is not under any legal obligation to pay, nor has any right to pay. (26) That the county auditor delivered his duplicate in the years 1892 and and 1893 to the county treasurer on the 5th day of December in each of those years. (27) That on or about April 3, 1893, the council passed appropriations for 1892 as follows: Interest on bonds, $21,000; for other purposes, $19,027; that on or about December 24, 1893, the council passed appropriations for the year 1893 as follows: Interest, $19,706; salaries, expenses, fire hydrants, and lighting streets, $22,493; that neither of these appropriations was by ordinance; that the

city had no interest, salaries, expenses fire hydrants or lights to pay to exceed the sum of $2,000. (28) That plaintiff's property was offered for sale for the taxes of 1892, and bid in by the county in substantially the same manner as is alleged in paragraph 22. (30½) That the county levied taxes in the years 1891, 1892, 1893 and 1894 for interest upon certain bonds which were issued without consideration, and which were void upon their face; that the county never at any time provided for any tax to pay the principal of said bonds. (31) That the county treasurer threatens to make deeds to the propeaty to the county and city. (33) That the aforesaid taxes appear upon the tax duplicates of the county, and cast a cloud upon the plaintiff's title.

We will now proceed to consider these controverted allegations in their order. As to paragraph 8, the evidence discloses that the city levy in 1890 was based upon an estimate made by the auditor, and we are unable to discover in what manner the failure to pass a general appropriation ordinance affected the validity of the levy. Such failure may have interfered with the right of the city to make contracts or expend money during the current fiscal year, but it did not affect the levy in any respect whatever. There is no more connection between the general appropriation ordinance required by the statute and the levy and collection of city taxes than there is between the levy of state taxes and legislative appropriations. Laws 1890, chap. 37 Art. 15. It is contended that the levy was in excess of the amounts permitted under Comp. Laws, §§ 1155-1158, inclusive. This is untenable. The law applicable reads as follows: "The city council shall at the first regular meeting in September, or within ten days thereafter, levy a tax for gen-

eral purposes sufficient to meet the expenses of the year, based upon estimates furnished by the city auditor or a committee of the city council, and in addition thereto, an addition for the interest and sinking fund as required by this act, and such levy shall be certified forthwith to the county auditor of the county in which such city is situated, together with the amount levied by the board of education of such city if any. This levy shall be in the form of a certain number of mills on the dollar of valuation. The auditor of such county shall extend the same upon the tax roll of the county with, and in the same manner as other taxes are extended, except that the city tax may be included in one amount, and the school tax in one amount, for each person, lot or parcel of land." Laws 1890, chap. 37, Art. 10, § 7. It is provided in the constitution that "the legislature shall restrict the power of such [municipal] corporations to levy taxes and assessments, borrow money and contract debts, so as to prevent the abuse of such power." Const. Art. 10, § 1. It may have been the duty of the legislature, in revising the laws relating to municipal corporations in 1890, to have restricted their powers as directed by the constitution; but it did not do so, and it did repeal the sections of the Compiled Laws above cited. The provision of the constitution just quoted is clearly not self-executing. Therefore the conclusion is irresistible that this levy did not exceed the amounts permitted by the statutes then in force, and that it was not illegal.

Paragraph 9: It is not shown by a clear preponderance of the evidence that the county levy of 1.5 mills was made for the purpose of paying illegal bonds. The most that can be claimed is that there may have been county bonds issued with-

out consideration, but it affirmatively appears that there were valid outstanding bonds, and it must be presumed the levy was for the purpose of paying lawful obligations. Without intending to imply that the facts alleged in this paragraph would, if true, invalidate any portion of the taxes involved in this action, we sustain the court below in finding that the facts were not proved.

Paragraph 10: The statute then in force directed the county auditor to prepare a duplicate of the tax list, and deliver the same to the county treasurer on or before the 1st day of November following the date of the levy for the current year. Comp. Laws, § 1594. Since 1891 the time for delivering the duplicate has been the 1st day of December. Laws 1891, chap. 14, § 75; Laws 1897, chap. 28, § 74. It would be sacrificing substance to form to hold that a failure on the part of the auditor to strictly comply with the statute as to the date of delivering the duplicate should invalidate all taxes levied in the county for the current year. If the duplicate be delivered before the taxes become due, no one can possibly suffer any injury by reason of its not having been handed to the treasurer on or before the date fixed by the statute. It was not reversible error for the trial court to find against the plaintiff as to this fact, because it was wholly immaterial.

Paragraph 11: What has been said disposes of the allegation relative to the appropriation. The allegation relating to exemptions is not sufficiently definite and certain, as to the amount of such exemptions, to raise an issue; but this objection may have been waived by the admissions of the defendants. We will assume that it was, and consider the facts to be as admitted upon the trial. The admission is in the following

language: "It is admitted by both plaintiff and defendants that for the years 1892, 1893, and 1894 the Pierre Waterworks Company was exempted from the city and school taxes on their personal property, aggregating the assessed value of $15,000 each year; and that outlot B in the city of Pierre, consisting of about 30 acres, has been used by the city as a park, and under the authority of the Western Town-Lot Company, the city having control of the park for the years 1889, 1890, 1891, 1892, 1893, and 1894, and that the said outlot B has been exempted from taxation by the city of Pierre, and that the title to said outlot B is in the Western Town-Lot Company; that during all the years mentioned in the complaint, by virtue of an agreement, the city of Pierre has been in possession of outlot B, and used and maintained the same as a city park, has fenced and expended money in fencing the same, and has used it as a park, to exclusion of all others; that all of the authority exercised by the city was under an agreement with the owner. It is agreed that the value of outlot B was of the aggregate value during each of the years 1889 to 1894, inclusive, the sum of $15,000 for each year." The city had power "to purchase, condemn, hold and improve public parks within or without the limits of the city and provide for the protection, improvement, and preservation of the same." Laws 1890, c. 37, Art. 5, § 1, subd. 44. Under this statute the city was authorized to lease land for park purposes, and could pay for its use an amount equal to the taxes thereon. This is, in substance, what appears to have been done, and the transaction did not constitute an unlawful exemption of taxable property. The exemption of the waterworks company's property, was undoubtedly unauthorized. Const. Art. 11 §§ 5-7. There is nothing to indi-

cate that the officers of the city acted otherwise than in good faith. It must be presumed that they intended to perform their duties properly, and in accordance with law. The exemption of this property should, therefore, be regarded as re-sulting from an honest mistake of law. Concerning such omissions Judge COOLEY employs the following language: "It has been decided in a number of cases that accidental omissions from taxation of persons or property that should be taxed, occurring through the negligence or default of officers to whom the execution of the taxing laws is intrusted, would not have the effect to vitiate the whole tax. The reasons for this conclusion are summarized in one of the cases as follows: 'The execution of these laws is necessarily intrusted to men, and men are fallible, liable to frequent mistakes of fact, and errors of judgment. If such errors on the part of those who are attempting in good faith to perform their duties should vitiate the whole tax, no tax could ever be collected. And, therefore, though they sometimes increase improperly the burden of those paying taxes, the rule which holds the tax not thereby avoided is absolutely essential to the continuation of the government.' It seems difficult to resist the force of this reasoning, and it applies to the case of a mistake of law with the same cogency as to the case of a mistake of fact. Indeed, where the omission has occurred through no purpose to evade or disregard official duty, the occasion which produced it seems wholly immaterial." Cooley, Tax'n, 216. In Watson v. Inhabitants of Princeton, 4 Metc. (Mass.) 599, 602, SHAW, C. J., says that the case of omission, through error of judgment or mistake of law, to tax property that should be taxed, can give no right of action to recover back any portion of the tax paid by another.

"Various other remedies may be resorted to to secure just and legal taxation. The law is strict in requiring that the whole valuation shall be seasonably laid before all the taxpaying inhabitants, in order that any omission, mistake, or inequality may be corrected before the tax is collected. It is for the interest of the town, and of the inhabitants generally, that each inhabitant liable should be taxed and to the extent of his liability; and therefore it must be presumed to be the inclination of assessors to impose, rather than omit, a tax in case of doubt, leaving the individual aggrieved to raise the question if he shall think fit. And the final remedy, if the inhabitants believe that their assessors are acting upon erroneous principles, is to elect others in their places." See, also, George v. Inhabitants of Second School Dist., 6 Metc. (Mass.) 497; Dean v. Gleason, 16 Wis. 1. A mistake without intentional wrong or fraud, whereby personal property which should have been taxed is omitted from the tax list, will not invalidate the list. Wilson v. Wheeler, 55 Vt. 446, citing Henry v. Town of Chester, 15 Vt. 460; Spear v. Town of Braintree, 24 Vt. 414. And see Burlington & M. R. R. Co. v. Seward Co., 10 Neb. 211, 4 N. W. 1016; Same v. Saline Co., 12 Neb. 396, 11 N. W. 854; State v. Maxwell, 27 La. Ann. 722. We think, upon reason and authority, that the validity of the taxes in question is not affected by the exemption of the waterworks property. What has been said concerning that property would apply with equal force to the park exemption, should it be conceded that the city erred in omitting it from the tax list.

Paragraph 12: The treasurer may not have resorted to all the methods provided by the statute for collecting the taxes against plaintiff's property. Laws 1891, Chap. 14, § 107. His

failure to do so was beneficial, rather than injurious to plaintiff, and she has no cause to complain of his neglect. Certainly his failure to enforce collection at the time stated did not invalidate the tax.

The only matter contained in Paragraph 13 which has not been heretofore considered is that the city levy did not specify for what it was made. The statute required that the levy be for "general purposes," but there was no substantial de parture from this requirement. The action of the council was thus recorded: "Resolved, that the sum of 12½ mills be levied on each dollar of valuation of the taxable property of the city of Pierre, South Dak., for the ensuing year." This was equivalent to a levy of that amount for general purposes, and the omission of any levy for interest and sinking fund did not invalidate the levy for general purposes. As heretofore observed, this levy was not in excess of any statutory limitation, and could have included "general purposes" and "sinking fund" in one item. Laws 1890, Chap. 37, Art. 10, § 7.

Paragraph 14: In 1891 the county was authorized to levy for "sinking fund such rate as in the estimation of the board of county commissioners will pay one year's interest on all outstanding debts of the county, with not to exceed 15 per cent on the principal." Laws 1891, Chap. 14, § 73. In the absence of any evidence to the contrary, it will be presumed the board properly performed its duty in this respect.

Paragraph 15: We have been unable to find any evidence as to the value of plaintiff's property, and we cannot say, after a careful examination of the record, that any of the allegations in this paragraph are proven by a clear preponderance of the evidence. Hence, under the established rule in this jurisdic-

tion the decision of the trial court relative to these issues of facts must be sustained.

Paragraphs 16 and 17 contain no material facts not heretofore discussed, and the decision below respecting the same is sustained.

Concerning the facts alleged in Paragraph 22, the treasurer testified as follows: "Lots 1, 2, and 6 in Block 7 of Original Plat to Pierre and Lots 13 and 14 in Block 3 of First Railway addition to Pierre were sold November 10, 1892, for the taxes of 1890 and 1891, for the following amounts: Lots 1 and 2 in Block 7, together, for $728.46, Lot 6 in same block for $536.61, and Lots 13 and 14 in Block 3 of First Railway addition, both together, for $276.49. These were all sold to Hughes county. All the memorandum that was made of these sales at the time of sale was a note on the tax list indicating that county was the bidder. The only memorandum made for Lots 1, 2, and 6, Original Plat, was 'Co.,' and for Lots 13 and 14, Block 3, of First Railway addition was 'See 1890 tax,' and there is no memorandum on the page referred to except "No. of certificate 288.' This memorandum was made after the sale as soon as we could get to it. It may have been ten days after sale. There was no memorandum made on day of sale. The treasurer has the certificates of sale on file, and they were issued to Hughes county under date November 10, 1892. I mean that is the date they were offered for sale. They were not made at that time. They were made five or six or ten days afterwards. As soon as the sale closes, we commence to write the certificates. They are written up in rotation. The certificates have remained in my possession ever since. The taxes for which these sales were made have never been canceled on

tax duplicate or record, and still exist, as far as the tax is concerned. These same lots were sold for the taxes of 1892 in 1893, and the memorandum of sale as to Lots 1, 2, and 6 in Block 7, and Lots 13 and 14 in Block 3, First Railway addition, was 'Co.' The certificates were written up four or five days afterwards." This is all the testimony relating to the 1892 sale. Considered in connection with the presumption that, in the absence of evidence to the contrary, the treasurer properly performed his duties, no fact is established which renders the sale invalid, or which deprives the county of all the rights, both legal and equitable, that any person could acquire by reason of a tax sale. . Laws 1891, Chap. 14, §§ 106, 113.

For reasons heretofore given the trial court did not err in finding that the allegations of paragraph 23 were not proved.

The allegations of paragraph 25 not having been established by a clear preponderance of the evidence, the decision of the trial court in relation thereto is sustained. The matters alleged in paragraphs 26, 27, and 28 have been already considered. The allegations of paragraph 30½ are not established by a clear preponderance of the evidence. Paragraphs 31 and 33 are sustained by the evidence, but the failure of the trial court to so find was not reversible error, for the reason that, in view of the plaintiff's failure to establish any fact which invalidated the taxes in question, a finding in her favor as to these paragraphs would have been of no benefit whatever. The plaintiff offered in evidence the county levy of 1892 for the purpose of showing that the same was not in compliance with law. So much of it as is presented by appellant's abstract reads as follows:

County general fund......................................... 6.006  mills
  "    sinking fund......................................... 4.004    "
  "    insane fund......................................... ½.0005   "

      Total............................................... 13.0013   "
School district Pierre...................................... 6.006 ·
Pierre city....................... .................. .......... 17.0017

Defendants objected to the offered record on the ground that it does not appear to be illegal, but in strict comformity to statute. The court ruled that it should be presumed that the record was intended to levy so many mills on the dollar valuation, that there was nothing on the face of the record to preclude such presumption, and excluded the evidence. Error cannot be predicated upon this ruling. "The law respects form less than substance." Comp. Laws, § 4715. However inartistic the arrangement of these words, numerals, and signs, there can be no doubt as to what was intended. In the absence of any showing that the levy was so construed, in the computation of taxes, as to be illegal, and in the absence of the entire record made by the county in connection with the levy, and in the absence of the entire record offered in the court below, we cannot hold that the ruling of the learned circuit court was erroneous. The judgment appealed from is affirmed.