## LENNAN v. POLLOCK STATE BANK et al.

Where an applicaiton for a new trial is made on the minutes, and the notice of intent to move for a new trial, which specifies the particulars in which the evidence is alleged to be insufficient and the particular errors relied upon, is incorporated into the bill of exceptions, the sufficiency of the evidence and alleged errors may be reviewed on appeal, though the bill of exceptions contains no specifications of error.

Where the uncontradicted evidence was that, after the execution of a contract of sale of certain land, the purchaser wrote one F. who was the cashier of a bank, stating that he inclosed a draft for a certain amount, which, with other amounts on deposit, made up the purchase price of the land; that this was to be paid over on the receipt of warranty deed from the vendor to oneA. and a special warranty cross-deed from H. to the vendor; that the title for the first time had been declared acceptable; and that, if the deeds were not at the bank from H., then for the cashier to get them before paying over any money, so the deeds could be recorded together—it was error to find that there was an agreement that the purchase price should be paid into the bank as a special deposit, there to remain until title to the land was perfected, when it was to be turned over to the vendor.

(Opinion filed, February 13, 1907.)

Appeal from Circuit Court, Campbell County. Hon. LORING E. GAFFY, Judge.

Action by C. E. Lennan against the Pollock State Bank and J. J. Fenelon, as administrator of William Elgar, deceased. From a judgment for plaintiff, J. J. Fenelon, as administrator, appeals. Reversed, and a new trial ordered.

*Wishek & Guy* and *Taubman, Williamson & Herreid,* for appellant. *J. H. Perry,* for respondent.

HANEY, J.    After this action was commenced against the Pollock State Bank, J. J. Fenelon, as administrator of the estate of William Elgar, deceased, was made a party defendant.    A trial by the court resulted in a judgment against the administrator for the amount claimed and a dismissal as to the bank.    From this judgment, and an order denying his application for a new trial, the administrator appealed.

The allegations of the first amended complaint are substantially as follows:    (1)  That the defendant bank is a corporation created and existing under the laws of this state;  (2) that during the year 1902 the plaintiff deposited with the bank divers sums of money, aggregating $1,590.10, and that before this action was commenced plaintiff demanded the sum of the bank and it refused to pay the same;  (3)  "that J. J. Fenelon was on the 2d day of February, 1903, appointed by the county court in and for said county the administrator of the estate of William Elgar, deceased, and that said J. J. Fenelon as such administrator claims the said money as belonging to said estate, but which claim of said J. J. Fenelon, as administrator aforesaid, is without right, and the said J. J. Fenelon, who is also the cashier of said Pollock State Bank, claims to hold said money for the said estate of William Elgar, but which claim is without right, and the said estate of William Elgar, deceased, has no right, title, or interest in and to said money, and, if the said Pollock State Bank has turned over said money to the said J. J. Fenelon as administrator aforesaid, it was not authorized so to do."    The administrator's answer denies every allegation of the complaint not "specifically admitted, qualified, or denied."    It alleges that in the month of June, 1902, the plaintiff made and entered into a certain contract in writing with one William Elgar, wherein and whereby said William Elgar agreed to sell and the said plaintiff agreed to purchase, among other lands described in said contract, the S. E. ¼ of section 34, township 129 N., of range 76, in Emmons county, N. D.; that thereafter the said plaintiff deposited with the Pollock State Bank the sum of $1,590.10, to be paid to the said William Elgar upon the delivery to the said bank of a warranty deed to the above-described premises, to be by said bank turned over to plaintiff on

demand; that in pursuance of said contract the said William El-gar did deliver and deposit with the said bank a deed of war-ranty to the above-described land, and received from said bank the said sum of $1,590.10, so deposited; that since the execution and delivery of said deed of warranty as aforesaid, and the payment of said sum of money as aforesaid, the said William Elgar died, and this defendant J. J. Fenelon was duly appointed administrator of the estate of the said William Elgar, deceased, and now is the administrator of said estate; that the contract of sale aforesaid between the plaintiff and the said William Elgar has been in all things complied with on the part of the said William Elgar, and a deed of warranty given of the premises and delivered, and the purchase money has been paid by the said plaintiff; and that, should there be any cloud on the title to the above-described prem-ises, the defendant stands ready at any and all times to clear said title under the aforesaid deed of warranty. The issues raised by the separate answer of the bank need not be stated, as no one is in position to challenge the conclusions of the learned circuit court with reference thereto.

The contention that the record presents no reviewable errors, for the reason that the bill of exceptions contains no specifications of error, is not tenable. Where, as in this case, the application for a new trial is made "upon the minutes of the court," and the notice of intention, which specifies the particulars in which the evidence is alleged to be insufficient and the particular errors re-lied upon, is incorporated into the bill of exceptions, the sufficiency of the evidence and alleged errors may be reviewed in this court. Mt. Terry Min. Co. v. White, 10 S. D. 620, 74 N. W. 1060; Reagan v. McKibben, 11 S. D. 270, 76 N. W. 943; McMahon v. Crockett, 12 S. D. 11, 80 N. W. 136.

The learned circuit court found in effect that it was agreed between the plaintiff and Elgar that the purchase price should be paid into the defendant bank as a special deposit, there to re-main until title to the land was perfected, when it was to be turned over to the grantor; that the purchase price was so deposited; that the bank, believing the title had been made good,

paid over the money to Fenelon "as executor, who still holds the same," but that Elgar did not have good title to the land when the contract was executed, nor has title thereto been perfected by Elgar or his estate. It is contended that these findings are not justified by the evidence. As we read the record, it discloses that on December 18, 1902, Fenelon, who was cashier of the defendant bank, received a letter, signed by the plaintiff, the material portions of which are as follows: "Dear Sir: Enclosed find draft in the sum of $990.10. * * * This, with $500 now on deposit, sent you at one time, and $100 on deposit, left on the other occasion, makes the $1,600 sum total for the S. E. 34—129—76, less the abstract fees. * * * This is to be paid over on receipt of warranty deed from Elgar to J. Q. Adams, of Cook Co., Ill., consideration $1,600, and a special warranty cross-deed from E. J. Horton and wife to William Elgar; the title now standing in Horton's name. I don't like quitclaims. They are no good under the state law of South Dakota, and they probably won't be soon in North Dakota. Of course, I would prefer a warranty deed from Horton and wife; but I presume that Horton don't want to give it, as I judge that he has no particular interest in the case. * * * The title for the first time has been declared acceptable. The money has been on deposit, and, instead of paying him interest, I surely ought to be allowed interest on the money on deposit. If the deeds are not at your place from Horton, get them before paying over any money in this case, so the deeds can be recorded together—the deed from Horton to Elgar, and the deed from Elgar to Adams, as herein stated. Yours truly, C. E. Lennan." There is nothing in the record, so far as we can discover, which in any manner modifies the express authority and directions contained in this letter, and it conclusively appears that such directions were explicitly followed while Elgar was still living.

It is therefore apparent that the findings of fact upon which the learned circuit court based its conclusions that the money sent to Fenelon is held by the Elgar estate in trust, and is the property of the plaintiff, are not supported by the evidence; and there are no allegations in the second amended complaint, filed

when judgment was rendered, or in the findings of fact, which support the theory that plaintiff is entitled to recover the purchase price because of the failure of title; it appearing that the title has been accepted, and no offer to return Elgar's deed or to reconvey having been shown. So, without deciding whether the plaintiff might enforce a claim against the Elgar estate upon the warranties contained in the deed executed and delivered by him, or for the purchase price upon return of such deed, or reconveyance of the premises after such claim has been properly presented and rejected, we are forced to the conclusion that the judgment appealed from must be reversed, and a new trial ordered.