LARKIN et al., Appellants, v. CITY OF SIOUX FALLS et al., Respondents.

(201 N. W. 151.)

(File No. 5642.   Opinion filed December 5, 1924.)

1. **Municipal Corporations — Streets — Protest Against Street Improvement, Not Signed by Property Owner in Name Appearing of Record, Held Ineffective.**

    Protest against street improvement, under Rev. Code 1919, Sec. 6364, held ineffective, where name signed thereto differed from name of owner appearing of record.

2. **Municipal Corporations—Local Improvements—Constitutional Law—Legislative Restrictions on Assessments for Local Improvements in Municipalities Held Compliance with Requirement of Constitution.**

    Legislature by enacting Rev. Code 1919, Sec. 6364, giving owners whose property has frontage on proposed improvements right to protest sufficiently restricted municipalities in their powers to make assessments as required by Const., Art. 10, Sec. 1.

Appeal from Circuit Court, Minnehaha County; Hon. Asa Forrest, Judge.

Action by J. A. Larkin and another against the City of Sioux Falls and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

*Danforth & Barron,* of Sioux Falls, for Appellants.

*Roy D. Burns,* of Sioux Falls, for Respondents.

(1)   To point one of the opinion, Appellant cited: McMilian v. Butte, (Mont.) 76 Pac. 203; 28 Cyc. 889; Von Steen et al. v. City of Beatrice, (Neb.) 54 N. W. 677; Rogers v. City of Ottowa, (Kan.) 109 Pac. 765; City of Sedalia ex rel Gilsonite Construction

Co. v. Montgomery, (Mo.) 127 S. W. 50; Hawley v. City of Butte, (Mont.) 164 Pac. 305; Little v. Board of Supervisors of Vermillion County, (Illinois) 65 N. E. 79.

Respondent cited: Los Angeles Lighting Co v. City of Los Angeles et al., (Calif.) 39 Pac. 545; Von Steen et al v. City of Beatrice, 54 N. W. 667.

GATES, J.    In this action it was sought to have the special assessment for the paving of Sixth street in Sioux Falls between the west side of Duluth avenue and west side of West (Glenwood) avenue, made in 1923, declared void. Section 6364, Rev. Code 1919, refers to the resolution of necessity for a proposed local improvement to be adopted by the municipal governing body, and provides:

"After 20 days from the adoption of such resolution, unless the referendum be invoked or unless a written protest shall have been filed with the city auditor or town clerk, signed by the owners of more than 65 per cent. of the frontage of property liable to assessment, the governing body shall have power to cause such improvement to be made, to contract therefor and to levy and collect special assessments therefor, as provided in article 6, of this chapter."

In due time after the adoption and publication of the resolution of necessity for the paving of Sixth street protests were filed against this project, but the city commission disregarded the protests, or considered them inadequate, and proceeded with the project. The trial court found that the protests filed were not signed by the owners of 65 per cent. of the frontage of property liable to assessment and sustained the validity of the proceedings. The plaintiffs appeal from the judgment. They thus state their contention:

"There are only two questions to be decided by this court upon this appeal. The first being whether or not the protests filed by abutting property owners were sufficient to oust the jurisdiction of the board of commissioners of the city of Sioux Falls to proceed with said paving project, and to decide this question it is only necessary to decide the validity of the protests signed by Nellie "Mellic" or Nellie McCormick, and Thos. H. Kirby. The second question being whether or not sections 6364 and 6396 to 6412, inclusive, Revised Code 1919, and laws amendatory there-

to, under which the board of commissioners acted with reference to this paving project, are void under the provisions of sections 1 and 2 of article 10 of the Constitution of the state of South Dakota, in that the Legislature has not restricted the power of the board of commissioners of the city of Sioux Falls, to levy special assessments against abutting property owners."

The conceded foot frontage of the project is 5521.6. Sixty five per cent. of that frontage is 3,589.04. The frontage represented by protests must therefore have exceeded 3,589.04 in order to oust the commission of jurisdiction to proceed. The frontage represented by valid protests, as found by the trial court, was 3,374.5. The frontage represented by the alleged protests of Kirby and McCormick was, respectively, 166 and 60, so that it required the sustaining of the validity of both these protests in order to oust municipal jurisdiction of the project. The trial court's finding of fact with reference to the Mellic or McCormick protest was as follows:

"The court finds that within the proper time one Nellie McCormick, signed and caused to be filed with the city auditor a protest in form set out in finding No. 5, she signing such protest 'Nellie Mellic'; that she owned no property fronting on the proposed improvement in the name of Nellie Mellic and neither did the land title records of Minnehaha county show any title to land fronting on the proposed improvement in the name of Nellie Mellic; that she signed the protest herself; that she had no reason for getting her name confused, except that she claims she signed the name "Mellic" by mistake; that she did not want Sixth street paved; that she owned 60 feet of land fronting on the proposed improvement in the name of Nellie McCormick and which title was of record."

The conclusion of law based thereon was as follows:

"That the protest as set forth in finding No. 7 signed 'Nellie Mellic' by the property owner, Nellie McCormick, is ineffectual as a protest by Nellie McCormick, and gave the city commission no notice that a qualified property owner was protesting."

[1] We are of the opinion that the trial court did not err in making that finding nor in drawing that conclusion therefrom. The case of Los Angeles Lighting Co. v. City of Los Angeles, 106 Cal. 156, 39 Pac. 535, relied on by appellants, is not an auth-

ority which holds that a property owner may accomplish a legal protest by signing a fictitious name thereto. This disposes of the necessity of considering whether the Kirby protest was or was not a valid protest, because 166 added to 3374.5 would not equal 3589.04.

[2] The remaining contention, in substance, is that all special assessments for all local improvements in all cities and towns in this state are, and have been, invalid because it is claimed that the Legislature has never restricted municipal power over special assessments as required by section 1, art. 10 of our Constitution, which provides:

"The Legislature shall restrict the power of such corporations to levy taxes and assessments, borrow money and contract debts, so as to prevent the abuse of such power."

There is excellent authority for the view that the Constitution makers did not intend the word "assessments," in the above provision, to cover or apply to special assessments for local improvements apportioned according to benefits received. 25 R. C. L. 92; Dillon, Mun. Corp. (5th ed.) 2576, and notes; 28 L. R. A. (N. S.) 1149. Also the case of Henderson v Hughes County, 13 S. D. 576, 83 N. W. 682, might be considered as an authority for the proposition that the failure of the Legislature to enact the required restriction would not invalidate special assessment legislation but we need not decide either of those questions at this time.

Even if the word "assessments" was intended to apply to special assessments for local improvements, yet how can we say that the Legislature has neglected to obey the mandate of the Constitutoin? In the first act adopted after statehood relating to municipal corporations the Legislature provided that proposed special assessments for local improvements were subject to the protest of the owners of a majority of the abutting frontage (section 15, art. 16, c. 37, 1890. Was not that truly a restriction upon the power of a municipal corporation, and was it not expressly designed to prevent the abuse of municipal power? We are of the opinion that it was an extremely effective restriction upon municipal power. That provision remained in force until chapter 95, Laws 1911, changed the requirement from a majority to "more than 55 per cent." By chapter 126, Laws 1913, the preesnt re-

quirement of "more than 65 per cent," was enacted. Can it be consistently said that by these subsequent changes which reduce the power of protestants by requiring a larger percentage of protest, the Legislature has not restricted the municipal power? We think not.

There may be a twilight zone within which it might be doubtful if a real restriction remained had the Legislature increased the protest percentage nearer to 100 per cent., but we cannot say as a matter of law that the 65 per cent. requirement comes within that zone. We cannot in good conscience say that the Legislature has failed to obey the constitutional requirement above quoted, even if special assessments for local improvements assessed according to benefits are within the purview of the provision. There is therefore no foundation upon which appellants' second contention may stand.

The judgment is affirmed.

Note.—Reported in 201 N. W. 151. See, Headnote (1), American Key-Numbered Digest, Municipal corporations, Key-No. 297(1), 28 Cyc. 990; (2) Municipal corporations, Key-No. 297(1), 28 Cyc. 989.

Authorities discussing the question of assessments for public improvements by front-foot rule are collated in notes in 17 L. R. A. 330; 28 L. R. A. (N. S.) 1124; 50 L. R. A. (N. S.) 922; L. R. A. 1917D, 372.